264 So.2d 752 (1972)
Emile TOUCHET, Plaintiff and Appellee,
v.
FIDELITY AND CASUALTY COMPANY OF NEW YORK, Defendant and Appellant.
No. 3906.
Court of Appeal of Louisiana, Third Circuit.
July 5, 1972.
Rehearing Denied August 1, 1972.
*753 Lewis & Lewis by John M. Shaw, Opelousas, for defendant-appellant.
J. Minos Simon, John R. Mouton and Robert A. Lecky, Lafayette, for plaintiffappellee.
Before FRUGE, HOOD, and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
Plaintiff instituted this suit for workmen's compensation benefits alleging his total permanent disability as the result of a work-connected accident and additionally seeking penalties and attorney's fees. After a trial on the merits the district court rendered judgment in favor of plaintiff awarding him compensation for total, permanent disability from the date of the alleged accident, but denied his claim for penalties and attorney's fees. Defendants, plaintiff's employer, the City of Crowley, *754 Louisiana, and its insurer, the Fidelity and Casualty Company of New York, appealed that judgment to this court.
Plaintiff did not appeal the rejection of his demand for penalties and attorney's fees and we therefore do not consider that aspect of the case.
The facts show that plaintiff had been employed by the City of Crowley as a garbage collector for some fourteen years. His duties consisted of riding on the back of garbage trucks and, at each stop, jumping off the truck and dumping the garbage from cans put out by the residents of the City into the truck. In a given day he might make from 500 to 900 stops, depending on the route to which he was assigned.
On December 23, 1969, plaintiff jumped off the truck pursuant to picking up a garbage can. He and his partner, Austin Bertrand, who was riding on the other side of the truck, testified that, contrary to proper procedure, the truck was still moving when he jumped off. This was denied by the truck driver, one Nolan Richard. In any event, plaintiff stepped down on the edge of the blacktop, twisting his ankle and falling on his back.
Plaintiff, Bertrand, and another fellow employee, Joseph Stutes, testified that plaintiff informed his supervisor, Clovis Gauthreaux, of the incident on that same day and that the latter instructed plaintiff to soak his ankle in a solution of epsom salts. This was denied by Mr. Gauthreaux at the trial, but we note that he previously admitted the truth of plaintiff's version in a tape-recorded statement given to an investigator working for plaintiff's counsel. Be that as it may, plaintiff was either then or soon thereafter relieved of his garbage truck duties and put to work cutting grass in the neutral grounds of the City's streets. He found himself unable to perform that job either, as his ankle continued to swell, and on February 5, 1970, he consulted a physician, Dr. Henry L. Gardiner, Jr.
Dr. Gardiner was not given any history of trauma by plaintiff, who complained only of swelling and pain in his right ankle for some four weeks previously. Here, however, it should be noted, and borne in mind throughout our discussion, that plaintiff is completely illiterate, being unable to read or write in any language, and that he speaks only French. Thus there was a tremendous communication problem present between plaintiff and the various physicians. Dr. Gardiner diagnosed plaintiff's ailment as being deep vein thrombophlebitis of the right leg and hospitalized him for treatment. He stated that such a condition could have been caused by trauma.
Around February 13, 1970, Dr. Alfred E. Harmon, Dr. Gardiner's partner, began treating plaintiff. On that date plaintiff was complaining of pain in both legs. On March 9, 1970, plaintiff was complaining of weakness in the right leg. On March 30th, Dr. Harmon referred plaintiff to Dr. Fred C. Weber, a Lafayette orthopaedist for an evaluation of the right ankle due to his continuing complaints of pain in that area. In April, 1970, plaintiff developed stocking anesthesia in the lower right leg and was again hospitalized for this. Additionally he was referred to Dr. James R. Rivet, a neurosurgeon, as well as two other physicians who did not testify. Finally, in the latter part of that year, he was sent to New Orleans Charity Hospital for x-rays and other diagnostic tests, including a myelogram which showed mild disc protrusion. The report from Charity Hospital which was admitted by stipulation of counsel, taken as a whole, indicates a probable ruptured disc. Dr. Harmon opined that it was a reasonable medical probability that the trauma and injury which plaintiff described to him as having occurred on December 23, 1969, was causing his present symptomology and difficulties. Although Dr. Harmon had no definite diagnosis, he felt that plaintiff had a ruptured disc at the L 2, 3, or 4 level.
Dr. Weber, who limited his examination to plaintiff's right ankle, could find no ankle impairment that he could relate back to the injury of December 23, 1969. He was *755 of the opinion that plaintiff's difficulties stemmed from a condition of Cabot's feet, or high arches. He saw plaintiff only one time, on April 10, 1970.
Dr. Rivet found that plaintiff had diminished sensation to pinprick all along the right side of his body, and that his position and vibratory senses were out on the right side of his body. He found no objective evidence of disability, but concluded that plaintiff was suffering from hysteria and was therefore disabled.
The medical evidence, then, is not in complete agreement. We do not disregard the theory that the opinions of medical specialists regarding afflictions falling within their specialty are entitled to greater weight than those of general practitioners. Shuff v. Liberty Mutual Insurance Company, La.App., 134 So.2d 707. That general theory, however, loses force in situations such as the one before us, where the specialists examined the plaintiff but one time each. The examination of Dr. Weber, the orthopaedist, was limited to plaintiff's right ankle, and his major injury appears to be to his back. A second rule of the evaluation of medical testimony is, we think, more appropriate to this case. That being that the testimony of a treating physician is entitled to more weight than that of medical experts who have performed but sporadic examinations.
When we add to this the testimony of plaintiff, his co-employees, Bertrand and Stutes, and his son-in-law, Williams, which taken together clearly establishes an accident and plaintiff's continuing disability as a result thereof, we cannot say that the trial judge erred manifestly in concluding that plaintiff has borne his burden of proof.
The defendants point out that the statements made by plaintiff and Bertrand at the trial were in substantial conflict with those made to defendant's investigator previously. Here again we note plaintiff's inability to speak or understand English and his lack of literacy in any language. Because he could not understand what was written by the investigator he refused to sign the purported statement which was written in English. Bertrand, also being illiterate, admitted that a man came out to his house and wrote down his statement and read it back to him, and that he put his mark on it. When shown what purported to be the statement at trial, however, he couldn't identify it because he didn't know whether the mark appearing thereon was in fact his. Considering these circumstances we are not inclined to disturb the trial judge's evaluation of the credibility of these witnesses.
We note additionally that the testimony of the defendant's witness, Gauthreaux, was at least equally at variance with his prior statements to plaintiff's investigator. Defendant's other witness, Richard, testified that he did not see plaintiff fall. We agree with the trial judge, however, that plaintiff could well have fallen without being observed by Richard, as the latter was driving the truck.
Accordingly, we conclude that the trial judge acted correctly in finding that the plaintiff has been totally and permanently disabled since December 23, 1969, the date on which, according to the preponderance of the evidence, the accident occurred. The judgment of the district court is therefore affirmed at defendant-appellant's costs in both courts.
Affirmed.
ON APPLICATION FOR REHEARING
PER CURIAM.
In their application for rehearing defendants complain of the following statement, contained in the body of our opinion:
"A second rule of the evaluation of medical testimony is, we think, more appropriate to this case. That being that the testimony of a treating physician is *756 entitled to more weight than that of medical experts who have performed but sporadic examinations."
We agree that that statement does not clearly express our views. The general rule, we think, is that the testimony of a treating physician is entitled to more weight than that of an equally qualified physician who has performed only sporadic examinations.
We also agree with defendants that the testimony of a specialist as to matters which are within his field is usually entitled to greater weight than that of a general practitioner. Blue v. Kinney Company, 256 So.2d 145 (La.App. 3 Cir. 1972).
These are general rules, however, and they do not preclude the trial judge from weighing and evaluating all of the medical evidence, and in most cases the lay testimony, relating to the injuries sustained by plaintiff. After doing so, the trial judge may accept or reject the opinion expressed by any medical expert, depending upon how he is impressed with the qualifications and the testimony of that expert. In Gates v. Ashy Construction Company, 171 So.2d 742 (La.App. 3 Cir. 1965), for instance, we said:
"The appellant further complains that the trial court should have given greater weight to the testimony of the specialists indicating limited disability or none. But we find no error in the trial court's having accepted instead the testimony of the attending general practitioner, because of the latter's much greater opportunities for observation over his extended period of treatment of the plaintiff, as compared with those of the specialists who saw the plaintiff briefly and chiefly for the purpose of forensic examination."
See also Clark v. Maryland Casualty Company, 223 So.2d 171 (La.App. 3 Cir. 1969); Moulard v. Massman Construction Company, 209 So.2d 742 (La.App. 3 Cir. 1968); Treadway v. State Farm Insurance Company, 204 So.2d 609 (La.App. 4 Cir. 1967); Johnson v. R. P. Farnsworth and Company, 186 So.2d 405 (La.App. 1 Cir. 1966); and Murphy v. American General Insurance Company, 122 So.2d 100 (La.App. 2 Cir. 1960).
In the instant suit, the trial judge apparently gave more weight to the testimony of the treating physician than he did to that of some of the specialists who examined plaintiff. We cannot say that he erred in doing so. Accordingly, the application for a rehearing is denied.
Denied.