382 So.2d 250 (1980)
Charles W. GUIDRY, Plaintiff-Appellant,
v.
Wannie D. DAVIS and Allstate Insurance Company, Defendant-Appellee.
No. 7504.
Court of Appeal of Louisiana, Third Circuit.
March 5, 1980.
*251 Joseph A. Koury, Lafayette, for plaintiff-appellant.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Timothy J. McNamara, Michael Harson, Lafayette, for defendant-appellee.
Before DOMENGEAUX, FORET and SWIFT, JJ.
SWIFT, Judge.
In this tort action plaintiff-appellant, Charles W. Guidry, appeals a jury verdict, asserting the amount awarded him as damages was grossly inadequate.
The record reveals that on February 7, 1977, Mr. Guidry was stopped in his automobile for a traffic light on South College Road in Lafayette, Louisiana, when his vehicle was struck from the rear by an automobile being operated by the defendant, Wannie D. Davis. There is no issue before this court as to the liability of Davis.
The plaintiff contends that in addition to the physical injuries he sustained in the accident, it was the precipitating cause of his psychiatric problems which manifested in a severe depression in April of 1977 and continued thereafter.
Mr. Guidry sued Davis and also Allstate Insurance Company, his own uninsured motorist carrier. Allstate filed a third party demand against Davis, asserting its subrogation right to recover all sums paid to plaintiff under its insurance policy. After trial on the merits, the jury awarded plaintiff $2600.00 in damages, exclusive of the prior payment by Allstate of $5,000.00 in compliance with the medical payment provisions of its policy.
The principal question for consideration in this case is whether or not the jury abused its "much discretion" in the amount of damages awarded to Mr. Guidry. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
For several years prior to this February, 1977, accident plaintiff had been treated for both physical and mental conditions. In October of 1970 he underwent surgery to fuse a broken neck sustained in an automobile accident. Not long after that his father died. In 1973 Mr. Guidry was hospitalized for a severe depression which his psychiatrist believed was brought on by the loss of his job due to an unauthorized company loan he had made to himself. He was sent to Central Louisiana State Hospital in Pineville, where he remained a short period of time.
Although he told the officer who investigated the accident of February 7, 1977, that he was not injured, the following day he consulted Dr. Michael E. Boustany, a surgeon, complaining of a headache and pains in his neck, chest wall and low back. Dr. Boustany's diagnosis was a severe strain of his cervical and lumbar musculature, with generalized body contusions and later a severe depression. The doctor's records reflect that while the plaintiff came into his office for heat treatments a number of times prior to March 7, Dr. Boustany examined him only twice thereafter, on February *252 10 and March 7, before Guidry was hospitalized the following April.
On April 10, 1977, plaintiff was arrested and charged with DWI when his automobile backed into a vehicle driven by Officer Kermit M. Rickert of the Lafayette Police Department, who had pulled him over after noticing his car weaving between lanes. Later that evening Guidry appeared at the hospital and was admitted for treatment because of what he described as being "powerless over alcohol". This seems to have been a problem for a number of years.
He was hospitalized again in May, 1977, for what was diagnosed as "early pneumonia", in July for tracheobronchitis and sinusitis, in December of 1977 for a condition known as "meralgia paresthetica". He was admitted again in September, 1978, for a severe depression. Whether or not any of these were related to the accident is subject to question.
Dr. William E. McCray, Mr. Guidry's treating psychiatrist since 1972, testified that most of the hospital admissions were made at his request although he was not listed on the hospital records as the admitting physician except the last occasion. Dr. McCray readily acknowledged that it was not known just what caused the plaintiff's impaired mental condition, but he expressed the opinion that the February, 1977, accident was the primary precipitating cause of his subsequent depression. He also said such a "trigger" usually will cause a reaction or depression to occur "within hours to days", although he admitted that plaintiff was not hospitalized for severe depression until two months later, on April 10, 1977. Actually, the plaintiff missed work only on February 8, 9, 10, 11 and 24, March 3 and April 1 during the period from February 7 to April 10, 1977. And a fellow employee testified he did his work well both before and after the February 7 accident. He did not notice any difference.
Dr. James D. Cole, a clinical psychologist who examined Mr. Guidry at Allstate's request, agreed that usually only a few days would pass between an aggravating precipitating factor and the occurrence of such a depression. His opinion was that the February accident did not cause plaintiff's severe psychotic depressive state, because it would have manifested itself within a week and he could not have maintained the work record that he did. Dr. Cole's opinion was that Mr. Guidry had a "severe emotional pathology which dates back most of his life." He believed that the threat to the plaintiff of possible loss of his job because of the D.W.I. in April was probably what triggered the psychotic depression which Dr. McCray diagnosed shortly after he was admitted to the hospital on April 10. In regard to plaintiff's hospitalization in September, 1978, allegedly due to a deposition being taken in connection with this case, Dr. Cole felt that the magnitude of his condition probably was related to some other factor more recent than the February, 1977, collision. He thought it may have concerned Mr. Guidry's job as this seemed to have been the precipitating factor in a number of his episodes.
The jury in this case was faced with the task of determining the credibility of the witnesses and the weight to be given their testimony. This applies as well to Mr. Guidry on whose truthful history great reliance necessarily must be placed for the experts to arrive at a proper evaluation of his mental problems. Significant doubts are raised throughout the record insofar as plaintiff's credibility is concerned. First, he testified on his deposition that he had not been involved in any automobile accident since February 7, 1977. It was only through testimony of Dr. McCray that the police car accident and hospitalization of April 10 were revealed. Mr. Guidry at that time told the admitting nurse he was "hit by a cop from the back", whereas in truth his automobile backed into the police car after Guidry was stopped for D.W.I. In addition, he tried to explain his deposition testimony by telling the jury at trial that he was not involved in the April 10 accident as he was out of his car when it was struck by the other vehicle. On the other hand, Officer Rickert testified positively that Mr. Guidry was in his car with one foot protruding *253 from its left door at the time of the collision. Mr. Guidry also denied telling the emergency room physician when he was hospitalized on April 10, 1977, that he had hurt his neck and back more in the accident that night than in the February 7 collision. However, this is clearly reflected in the doctor's note.
It is also well settled that the jury or trial judge may, and should, assess the credibility of experts who testify at the trial, as well as that of lay witnesses, to determine the most credible and realistic evidence and the fact finder's determination of the credibility of those witnesses will not be disturbed unless found to be clearly erroneous. Green v. State, Southwest Louisiana Charity Hosp., 309 So.2d 706 (La.App. 3 Cir. 1975); Monette v. Aetna Cas. & Sur. Co., 352 So.2d 423 (La.App. 3 Cir. 1977). After weighing and evaluating all of the medical evidence, and in most cases the lay testimony, relating to the injuries sustained by a plaintiff, the jury or trial judge may accept or reject the opinion expressed by any medical expert, depending upon how he is impressed with the qualifications and the testimony of that expert. Touchet v. Fidelity and Casualty Co. of New York, 264 So.2d 752 (La.App. 3 Cir. 1972).
It is apparent that the jury in this case, in awarding only $2600.00 above the medical expenses previously paid, was of the opinion that the February 7, 1977, accident did not cause or bring about Mr. Guidry's subsequently manifested mental symptoms.
While it is quite possible that we would have reached a contrary result had we tried this case in the first instance, we certainly cannot say the jury's obvious conclusion, that the plaintiff's severe depression was not precipitated by the accident of February 7, 1977, was clearly wrong. From our review of the record we find that there was evidence before the trier of fact which upon its reasonable evaluation of credibility furnished a reasonable basis for the jury's finding. Since it was not manifestly in error, we are not authorized to disturb this factual finding. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
Evidently, the only injuries proven which the jury found were sustained in the February, 1977, accident were strains of the cervical and lumbar muscles and general body contusions. The treatment prescribed therefor by Dr. Boustany consisted of muscle relaxants, Darvon for pain and diathermy. The doctor actually examined the plaintiff for these on only three occasions before the April 10 accident, the last being one month post-accident. Then he was referred to a neurosurgeon, Dr. James R. Rivet, who testified that he would not be surprised to find Guidry complaining of his neck and back even without an accident in view of his preexisting spinal condition, but he thought they were related to his accident of February 7, 1977. However, the doctor did not find any bone or disc injury.
Under the evidence the award of $2600.00 may be low, but it is not an abuse of the "much discretion" afforded a jury in these matters. South Central Bell Tel. Co. v. Branch, 360 So.2d 271 (La.App. 4 Cir. 1978); Jolivette v. Safeco Insurance Company, 379 So.2d 1213, (La.App. 3 Cir. 1980).
Accordingly, the judgment of the trial court is affirmed. All costs are assessed against plaintiff-appellant.
AFFIRMED.