422 So.2d 1200 (1982)
Hazel HOLMES, etc.
v.
SOUTHEASTERN FIDELITY INSURANCE COMPANY, et al.
Gladys Kilbourne McNABB, et al.
v.
SOUTHEASTERN FIDELITY INSURANCE COMPANY, et al.
Nos. 15048, 15049.
Court of Appeal of Louisiana, First Circuit.
October 12, 1982.
Rehearing Denied December 16, 1982.
*1201 Ralph Brewer, Baton Rouge, for Hazel Holmes, etc., plaintiffs-appellants.
J. Arthur Smith III, Baton Rouge, for Gladys Kilbourne McNabb, et al., plaintiffs-appellants.
Richard B. Nevils, Baton Rouge, for Southeastern Fidelity Ins. Co., et al., defendants-appellees.
Before COVINGTON, LEAR and LANIER, JJ.
LANIER, Judge.
This is a suit in tort for damages by the surviving wives and children of two men who were killed in an intersectional collision between an automobile (in which the deceaseds were passengers) and an 18 wheeler tractor-trailer. Jury verdicts were returned determining that the driver of the automobile was negligent and that the driver of the tractor-trailer was not.[1] The trial court rendered judgment in accordance with these verdicts. Plaintiffs took this devolutive appeal.

I. FACTS
On December 14, 1979, at approximately 5:30 A.M. Isaac Brown was operating a 1974 Oldsmobile automobile owned by him in an easterly direction on Louisiana Highway 412 (Slaughter Road) in the Parish of East Feliciana, Louisiana. Peter J. McNabb was a passenger in the right front seat of the Brown vehicle and Willie Holmes was a passenger in the rear seat. At this same time and place, Ed Gwin was operating a 1978 Chevrolet 18 wheeler tractor-trailer owned by Johnny Sagona in a northerly direction on Louisiana Highway 67 (Plank Road). Gwin was within the scope and course of his employment with Sagona. The tractor-trailer, Sagona and Gwin were insured by Southeastern Fidelity Insurance Company. Highway 412 intersects Highway 67 from the west at an angle of 72½° forming a T-type intersection. Highway 412 at its intersection with Highway 67 is controlled by a stop sign. On the eastern side of this intersection is a small business known as Doris' Grocery. The collision occurred when the front of the tractor-trailer struck the right side of the Oldsmobile automobile in the northbound lane of Highway 67. As a result of this collision, Holmes and McNabb were killed. McNabb was survived by his wife, Mrs. Gladys Kilbourne McNabb, and four minor children, Peter James McNabb, Jr., Nicholle McNabb, Nadine McNabb and Frederick McNabb. Holmes was survived by his wife, Mrs. Hazel Holmes, and one minor child, Beverly Jean Holmes.

*1202 II. NEGLIGENCE OF ED GWIN
The essence of the appellants' assignments of error is that the verdict of the jury finding that Ed Gwin was free from negligence is clearly wrong.
Gwin testified that on the date and at the time in question, he was driving the 18 wheeler truck in a northerly direction on Highway 67 in his proper lane of travel (northbound lane) at a speed of 50 miles per hour with his lights on. The purpose of his trip was to secure a load of gravel in the vicinity of Clinton, Louisiana. Gwin testified that when he was approximately two car lengths from the intersection of Highway 412, he observed a vehicle with its lights on approaching from his left (from the west) as that vehicle was passing the stop sign controlling Louisiana Highway 412. When he realized that the vehicle was not stopping, he hit his brakes and struck the vehicle in the northbound lane of travel of Highway 67. The force of the impact knocked his foot off of the truck's brakes and at some point in time later, he was able to get his foot on the brakes and bring the vehicle to a halt on the right (east) shoulder of the roadway. Gwin estimated the speed of the Brown vehicle as it passed the stop sign and crossed the intersection at approximately 30-35 miles per hour.
Milton Dodson testified that he was in another 18 wheeler gravel truck following the truck driven by Gwin at a distance of approximately three and one-half to four truck lengths. Dodson's testimony was substantially the same as that of Gwin, except that he estimated the speed of the Brown vehicle as it went through the stop sign and across the intersection at 35-40 miles per hour.
Isaac Brown testified that he was proceeding in his proper lane of travel on Highway 412 and that upon reaching its intersection with Highway 67, that he came to a stop at the stop sign. He looked to his right and observed a truck approaching at some distance down the roadway, but determined that he had sufficient time to negotiate the intersection to go to Doris' Grocery located on the east side of Highway 67. Brown testified his car stalled in the middle of Highway 67. He took his vehicle out of gear, pumped the gas pedal several times, got the motor running, and had just put his vehicle back in gear when the impact occurred. Brown testified that at the time of impact he was not moving and that the front end of his vehicle was in the northbound lane of Highway 67 and the rear end of his vehicle was in the southbound lane.
Trooper William J. Thompson, Jr. investigated this accident shortly after it occurred. Trooper Thompson determined that the point of impact occurred in the northbound lane of Highway 67, that the front of the truck struck to the rear of center on the right side of the Brown vehicle, that the impact caused the Brown vehicle to proceed from the point of impact in a northeasterly direction for a distance of 63 feet where it collided with a parked vehicle located off of the roadway, and from there it traveled an additional 31 feet and came to rest against a fence 94 feet in a northeasterly direction from the point of impact. Thompson determined that the front of the truck traveled 212 feet from the point of impact to its final place of rest, that Highway 67 was 23 feet wide, that Highway 412 was 21 feet wide, and that the speed limit was 55 miles per hour. Thompson also located two sets of skid marks measuring 81 feet and 78 feet, respectively, which were left by the truck prior to its impact with the Brown vehicle. No skid marks were found beyond the point of impact.
Joseph H. Barnwell testified as an expert witness on accident reconstruction on behalf of the appellants. He testified that the average perception time of the ordinary driver is three-fourths of a second (the time between the initial perception of an object and the commencement of reaction) and that assuming Gwin was traveling 50 miles per hour (73 feet per second), that he traveled 55 feet between initial perception and commencement of reaction. Barnwell testified that the average reaction time of the ordinary driver of a truck was 1¼ seconds and that at 50 miles per hour Gwin would have traveled 92 feet. Barnwell testified *1203 that in his opinion, it took 1.35 seconds to leave the 81 feet of skid marks prior to impact and that, accordingly, from Gwin's initial perception of the Brown vehicle to the time of impact, 3.35 seconds had elapsed and his truck covered a distance of 228 feet. He further testified that it was 47 feet from the stop sign on Highway 412 to the western edge of Highway 67, that Highway 67 was 23 feet wide, that Brown's automobile was 19 feet long, and that the Brown vehicle would have to travel 89 feet from the stop sign until it cleared the eastern edge of Highway 67. He then observed that if the Brown vehicle was traveling at 30 miles per hour (44 feet per second), that it could travel from the stop sign and clear the eastern edge of Highway 67 in two seconds and that, accordingly, it was impossible for this accident to occur if the speed of the Brown vehicle was that testified to by Gwin and Dodson. Barnwell conceded on cross-examination that the accident could have happened in accordance with the Gwin version if the Brown vehicle was going 15 miles per hour. Barnwell also conceded that he did not determine Gwin's actual perception and reaction times, but used average values.
Barnwell further observed that pursuant to his calculations when Gwin first perceived the Brown vehicle, that he was 228 feet from the point of impact and that this was a distance greater than two car lengths from the intersection.
Barnwell testified that in his opinion Gwin was traveling between 61 and 71 miles per hour at the time that he initially perceived the Brown vehicle. He based this opinion primarily on the fact that the front of the truck traveled 212 feet from the point of impact to its final resting point. He further estimated that the speed of the truck immediately prior to impact was 48-59 miles per hour and that the truck lost 4-5 miles per hour in speed as a result of the impact. He testified that the average coefficient of friction (drag factor) for a road like Highway 67 was 0.65. Since the truck did not skid after impact and because for some unspecified period of time Gwin did not have his foot on the brakes of the truck after impact, Barnwell calculated the speed of the vehicle based on estimated coefficients of friction ranging between 0.3 and 0.46. Barnwell conceded that he did not know how long Gwin had his foot off of the brakes after impact and that he had estimated the range of the appropriate coefficients of friction. Barnwell testified that these calculations in part were based on the law of conservation of momentum which provides that the mass of a vehicle times its velocity plus the mass of the adverse vehicle times its velocity upon impact is equal to the mass of the first vehicle times its velocity after impact plus the mass of the second vehicle times its velocity after impact. At no point in his testimony did Barnwell explain what was the velocity of the Brown vehicle after impact nor did he demonstrate to the jury how he arrived at the calculation of a reduction of speed of the Gwin vehicle of 45 miles per hour caused by the impact nor did he adequately explain his calculation of 48-59 miles per hour immediately prior to impact.
Barnwell timed the actions of taking a vehicle out of gear, pumping the accelerator, and putting a vehicle back into gear, testified to by Brown, and determined that it would take ten seconds to perform these acts. Barnwell reasoned from this that if Gwin was going a lawful speed and was properly observant, he could have timely observed the disabled Brown vehicle and safely stopped the truck. He further was of the opinion that because of some smear marks on the paint of the Brown vehicle that Brown had commenced moving slightly forward at the time of impact. Barnwell further determined that the Brown vehicle came to rest 52 feet east of the eastern edge of Highway 67.
The finder of fact, be it judge or jury, should assess the credibility of witnesses, expert or lay, to determine the most credible and realistic evidence. Guidry v. Davis, 382 So.2d 250 (La.App. 3rd Cir.1980). In reaching conclusions, the finder of fact need not accept all of the testimony of any witness as being true or false and may *1204 believe and accept a part or parts of a witness' testimony and refuse to accept any part or parts thereof. Ewing and Salter, Inc. v. Gafner Automotive & Machine Inc., 392 So.2d 762 (La.App. 3rd Cir.1980), writ denied 396 So.2d 933 (La.1981); LeBlanc v. Cordaro, 378 So.2d 1027 (La.App. 2nd Cir. 1979); Payne v. New Orleans Public Service, Inc., 374 So.2d 189 (La.App. 4th Cir. 1979). The opinions of expert witnesses are not binding on the finder of fact and are to be weighed the same as any other evidence. Trichel v. Louisiana State Highway Department, 402 So.2d 784 (La.App. 3rd Cir.1981); State v. Wilco Construction Co., Inc., 393 So.2d 885 (La.App. 4th Cir.1981); Gleason v. City of Shreveport, 393 So.2d 827 (La.App. 2nd Cir.1981), writ denied 397 So.2d 806 (La.1981); Smith v. Andrepont, 378 So.2d 479 (La.App. 1st Cir.1979), writ denied 380 So.2d 102 (La.1980). The weight to be given expert testimony is dependent upon the professional qualifications and experience of the expert and the facts upon which the opinion is based. Middle Tennessee Council, Inc., Boy Scouts of America v. Ford, 274 So.2d 173 (La.1973); Thibodeaux v. Southeastern Fire Insurance Company, 399 So.2d 704 (La.App. 1st Cir.1981). The fact finder's evaluation of expert and lay testimony will not be disturbed unless found to be clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); State, Department of Transportation & Development v. Estate of Aertker, 404 So.2d 316 (La.App. 3rd Cir.1981); Guidry v. Davis, supra.
Appellants argue that since the testimony of the parties is irreconcilable, that the physical facts surrounding the accident should be the determining factors as interpreted by their expert Barnwell. Hue v. Blanchard, 337 So.2d 1218 (La.App. 1st Cir. 1976). Barnwell in his testimony conceded that the accident could have occurred in the manner described by Gwin and Dodson if the Brown vehicle was traveling at 15 miles per hour. Accordingly, the jury reasonably could have concluded that Gwin and Dodson were partially in error when they estimated Brown's speed between 30 and 40 miles per hour and accepted Barnwell's figure of 15 miles per hour.
Barnwell, in his testimony, conceded that there was no evidence of precisely how long Gwin's foot was off of the brakes of the vehicle after impact and prior to coming to a halt. Since the entirety of Barnwell's calculation of Gwin's initial speed was based in part on an estimated range for the coefficient of friction used to determine the speed of the truck after impact, the jury could validly determine that Barnwell's assumption was not precise or accurate and, accordingly, could have rejected this calculation, and the opinion on initial speed.
Brown testified that he was stopped at the time of impact and that the front of his vehicle was in the northbound lane and the back of his vehicle was in the southbound lane. Gwin, Dodson and Trooper Thompson all put the point of impact entirely in the northbound lane of Highway 67. The jury could have reasonably determined that the Gwin-Dodson-Thompson point of impact was correct and that Brown's testimony was not worthy of belief. If the jury rejected Brown's version of the facts, then such portions of Barnwell's opinions which were based on the rejected testimony, such as the ten second delay due to stalling in the roadway, must also be disregarded.
Considering all of these facts and circumstances, we cannot say that the jury was clearly wrong in accepting Gwin's version of the accident and rejecting the testimony of Brown and the expert witness Barnwell.

III. CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed at appellants' costs.
AFFIRMED.
NOTES
[1] At the conclusion of the evidentiary portion of the trial, the plaintiffs dismissed their claims against the insolvent driver of the automobile.