FORET, Judge.
This is a tort action arising from an automobile accident in which the vehicle occupied by plaintiff, Shelton White, as guest passenger, was rear-ended by a car driven by Judith L. Morgan, who was insured by Government Employees Insurance Company (GEICO).
A motion for directed verdict on the issue of liability was granted in favor of White. The jury rendered a verdict in favor of White and against defendants, Judith Morgan and GEICO, in solido, in the amount of $1,689.34 in past medical expenses and $10,000 for mental and physical pain and suffering. The jury denied plaintiff damages for past or future lost wages.
White appeals the jury’s failure to award any amount for lost earnings. We affirm.
FACTS
The accident occurred on July 27, 1985 when the automobile in which White was traveling was rear-ended by an automobile driven by Judith Morgan. On the day of the accident, White was treated at Rapides General Hospital emergency room for complaints of chest pains and a sore neck and back. White’s chest and spine were x-rayed, with negative findings. He was released and advised to see his family physician for any further problems. He was later seen by Dr. Chicóla, his family physician, who advised him that he had a chest contusion.
At the time of the accident, White was employed by G & N Construction Company as a lead man iron worker at $11.50 per hour. He continued working until he was laid off due to absenteeism on or about February 28, 1986. White testified that, although he would have some pain, he still tried to work because he wanted to hold on to his job. He stated that he did not let his employer know he had suffered an injury. Consequently, he would call in and make an excuse when he had to miss work due to pain and/or doctor’s appointments.
*40 White’s supervisor, Delbert Miller, testifying by deposition, stated that White was absent at least one day a week for several months before he was laid off. Miller testified that White was a hard worker before he got laid off; a “hustler on the job” and a “real conscientious guy.” He also testified that White put his work out, despite his absenteeism. He was satisfied with White’s job performance, except for the fact that White was not working full time.
In June of 1986, Miller contacted White and requested that he return to work as a temporary iron worker. White worked for two days but failed to return to work after the second day. Miller testified that when White was called back in June of 1986, his work was not satisfactory. He complained that White had to stand up a lot from a bending position and seemed to have to “get his wind.” White agreed that when he returned in June of 1986 he could not do the work satisfactorily.
From September 5,1985 until the time of trial in December of 1986, White was under the care of Dr. Vanda Davidson, a board certified orthopaedic surgeon. White was also independently examined by Dr. Beur-lot, on March 21, 1986 and Dr. Kennon on October 3, 1986, both orthopaedists retained by defendants.
Dr. Davidson, White’s treating physician, initially examined White on September 5, 1985, approximately five or six weeks after the accident. Dr. Davidson diagnosed White as suffering from a cervical strain although he did note, after obtaining x-rays, some degenerative changes of the disc between the 5th and 6th vertebra in the neck. By February of 1986, since White’s symptoms were lasting too long to be the result of a strained muscle or pulled ligament, Dr. Davidson diagnosed White’s degenerative disc as causing White’s continued problems. At the exam of February 27, 1986, Dr. Davidson advised White to be very careful of any lifting.
Dr. Davidson testified that on March 3, 1986, White complained of pain in the neck region beginning at work the prior Friday when he had a particularly strenuous day. White explained to the doctor that he had been unable to continue the work and had been discharged. At this time Dr. Davidson requested White begin wearing a soft neck collar.
On March 21, 1986, approximately three weeks after White’s discharge from G & N Construction Co., White was examined by defendant GEICO’s orthopaedist, Dr. Ray Beurlot, Jr. Dr. Beurlot diagnosed White as having sustained a cervical and lumbar strain. He noted mild degenerative changes at the C5-C6 interspace, but did not find that this mild degenerative change would restrict White from returning to work as an iron worker.
After Dr. Beurlot’s examination of White on March 21, 1986, Dr. Davidson continued to treat White until the trial in December of 1986. Dr. Davidson recommended, on July 24, 1986, that White restrict his activities to light duty which did not require heavy use of the upper extremities. White’s symptoms progressively improved during this period.
Dr. Kennon, an orthopaedic surgeon, examined White on October 3, 1986. He found that White had sustained a cervical strain and/or sprain in the accident of July 27, 1985. Dr. Kennon performed x-rays on White and noted no significant degenerative changes. Dr. Kennon testified that there were no objective findings which would indicate any reason why White could not return to work as an iron worker. White was unemployed from March of 1986 through the time of trial in December of 1986, with the exception of the two days when he attempted unsuccessfully to return to work in June of 1986.
FAILURE TO AWARD LOST EARNINGS
The jury refused to award damages for lost earnings to White. Apparently the jury was not convinced that White’s unemployment was a direct result of the accident. The sole issue on appeal is whether this finding by the jury is clearly wrong.
The plaintiff has the burden of proving, by a preponderance of the evidence, the causal connection between the accident and *41 the injuries claimed. Coleman v. Victor, 326 So.2d 344 (La.1976). Whether or not this burden has been sustained is a question for the trier of fact and its finding will not be disturbed on appeal unless clearly wrong.
“Of particular relevance in the present case is the statement by this Court in Guidry v. Davis, 382 So.2d 250 (La.App. 3rd Cir.1980):
‘It is also well settled that the jury or trial judge may, and should, assess the credibility of experts who testify at the trial, as well as that of lay witnesses, to determine the most credible and realistic evidence and the fact finder’s determination of the credibility of those witnesses will not be disturbed unless found to be clearly erroneous. Green v. State, Southwest Louisiana Charity Hosp., 309 So.2d 706 (La.App. 3 Cir.1975); Monette v. Aetna Cas. & Sur. Co., 352 So.2d 423 (La.App. 3 Cir.1977). After weighing and evaluating all of the medical evidence, and in most cases the lay testimony, relating to the injuries sustained by a plaintiff, the jury or trial judge may accept or reject the opinion expressed by any medical expert, depending upon how he is impressed . with the qualifications and the testimony of that expert. Touchet v. Fidelity and Casualty Co. of New York, 264 So.2d 752 (La.App. 3 Cir.1972).’ ”
White v. Cumis Ins. Soc., 415 So.2d 574, 577 (La.App. 3 Cir.1982), writ denied. 420 So.2d 164 (La.1982).
A careful review of the record reveals that the jury could have reasonably concluded that White’s loss of earnings was not a result of the accident. The jury was not convinced of any direct connexity between White’s loss of earnings and the injuries he sustained in the July, 1985 accident. In light of the fact that the jury and the trial judge are in the best position to evaluate the credibility and demeanor of witnesses in the trial court, a reading of the record leads us to conclude that no manifest error exists in the jury’s refusal to award damages for lost earnings.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against plaintiff-appellant.
AFFIRMED.