546 So.2d 958 (1989)
Kendrick MARTIN, Plaintiff-Appellee,
v.
TRAVELERS INSURANCE CO., et al., Defendants-Appellants.
No. 88-532.
Court of Appeal of Louisiana, Third Circuit.
July 5, 1989.
*959 Tommy Dejean, Opelousas, for plaintiff-appellee.
Dauzat, Falgoust & Caviness, Steven Bienvenu, Opelousas, for defendants-appellants.
Before STOKER, LABORDE and YELVERTON, JJ.
LABORDE, Judge.
This is a worker's compensation case. Plaintiff, Kendrick Martin, filed this suit against defendants, the City of Opelousas and its worker's compensation carrier, Travelers Insurance Company (Travelers), seeking worker's compensation benefits, medical expenses, penalties, attorney's fees and legal interest. After a trial on the merits, the trial court awarded plaintiff supplemental earnings benefits with legal interest on all payments from date due, until paid, as well as medical expenses. The trial court also cast defendants with all costs but denied plaintiff penalties and attorney's fees. From this judgment, both parties appeal. We affirm.

*960 FACTS
Plaintiff was employed by the City of Opelousas as a park worker. On April 11, 1985, he injured his back while cleaning the weight room at the South City Park in Opelousas. Plaintiff was carrying some weights, when he tripped and fell against a bench. Following the accident, plaintiff was paid worker's compensation benefits and medical expenses until September 26, 1986.
Plaintiff was initially seen by Dr. W.J. Briley on the day of the accident. Dr. Briley treated the plaintiff conservatively for several weeks. Plaintiff was subsequently hospitalized to undergo a series of tests including x-rays, a CT scan, bone scan, and lumbar myelogram. Due to plaintiff's continued complaints of low back pain, Dr. Briley referred plaintiff to Dr. Frederick L. Mayer, an orthopedic surgeon. Dr. Mayer examined the plaintiff in the hospital on May 14, 1985 and again on July 3, 1985. Dr. Mayer testified by deposition that plaintiff's back examination and tests were normal at this time. He also stated that he did not find any clinically objective evidence of a lumbar disc herniation, nerve root compression or facet joint syndrome. Dr. Mayer did admit that there was some possibility of disc disease at the L5-S1 level based on the radiologist's interpretation of the CT scan. His diagnosis was a lumbar strain, resolving, and he advised Dr. Briley that plaintiff was capable of returning to work at that time.
Plaintiff testified at trial that after about three months of treatment with Dr. Briley he attempted to return to work. However, he stated that he only worked for four days because the pain in his back and legs was so great. Plaintiff then went to another orthopedic surgeon, Dr. Louis C. Blanda, for treatment. Dr. Blanda first saw plaintiff on August 16, 1985. In his deposition, Dr. Blanda stated that plaintiff's main complaint at that date was of continued low back pain, numbness in both legs and headaches. Dr. Blanda conducted a physical examination which revealed that plaintiff had a muscle spasm in his back. On October 7, 1985, Dr. Blanda again saw the plaintiff, and in reviewing his records at that time, Dr. Blanda felt that plaintiff had a possible disc injury at the L5-S1 level. This finding was consistent with plaintiff's complaints during his previous examination. Dr. Blanda then sent the plaintiff to Dr. Thomas C. Laborde for rehabilitation therapy. Dr. Blanda continued treating the plaintiff through 1986 and 1987. An MRI (Magnetic Resonance Imaging) scan was performed on plaintiff in October of '86 which, according to Dr. Blanda, confirmed disc herniation at the L5-S1 level. Dr. Blanda concluded that plaintiff was not capable of returning to any heavy work. Rather, he thought that plaintiff's physical infirmity would limit him "to light duty work at max." Dr. Blanda saw plaintiff again in December of 1986 and then in February of 1987. Plaintiff still complained of some back pain and occasional leg pain, but had improved under Dr. Laborde's rehabilitation program. Dr. Blanda again saw plaintiff on April 23, 1987. He stated that plaintiff at this time had only occasional leg pain, but "really hadn't gotten much better since his last visit."
Dr. Blanda testified in his deposition that plaintiff had a herniated disc in his back which did not require surgery as long as plaintiff took it easy. He felt that plaintiff should refrain from heavy lifting or repetitive lifting, situations where he might further stress his back. Otherwise, plaintiff ran the risk of further injuring the disc which might then require surgery. Dr. Blanda also stated that plaintiff was only disabled from performing heavy work and that he had left the decision of deciding when plaintiff should return to work to Dr. Laborde. Dr. Blanda did not believe that plaintiff's condition would improve.
Dr. Laborde, who treated plaintiff at the request of Dr. Blanda, stated in his progress report of April 28, 1986, that plaintiff was ready for light duty activities and should avoid repetitive bending, stooping, or lifting, or lifting objects that weigh more than 15-20 pounds. He also recommended that plaintiff avoid being in one position for longer than 30-60 minutes during the course of a work day and should *961 avoid prolonged exposure to heavy vibrational stresses.
Dr. Michael Heard, an orthopedic surgeon, also examined the plaintiff once on July 7, 1986. He examined the plaintiff's history, conducted a physical examination, took x-rays and performed a CT scan. Dr. Heard opined that the x-rays indicated some degenerative disc disease and that the CT scan showed moderate bulges at the L4-5, L5-S1 discs. However, there did not appear to be nerve root compression from the bulging discs. Dr. Heard diagnosed a cervical low back strain and concluded that plaintiff was capable of returning to work at that time.

SUPPLEMENTAL EARNINGS BENEFITS
On appeal, defendants contend that the trial court committed manifest error in awarding supplemental earnings to plaintiff under LSA-R.S. 23:1221(3)(a).
At the time of the accident, LSA-R.S. 23:1221(3) providing for supplemental earnings benefits, read in part:
"(a) For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to seventy-four percent of the difference between ninety percent of the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10)."
Paragraph 3(c)(i) of LSA-R.S. 23:1221 further provided that:
"Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region."
Thus, to qualify for supplemental earnings benefits under this statute, a plaintiff must prove by a preponderance of the evidence that as a result of a work related injury he can no longer earn wages equal to 90% or more of his wages at the time of injury. Clark v. Welex, A Halliburton Company, 517 So.2d 1186 (La.App. 3d Cir.1987), writ denied, 521 So.2d 1170 (La.1988).
In determining the extent of plaintiff's injury in this case, the trial court had to evaluate conflicting medical testimony, as well as lay testimony. In Guidry v. Davis, 382 So.2d 250, 253 (La.App. 3d Cir. 1980), this court stated:
"It is also well settled that the jury or trial judge may, and should, assess the credibility of experts who testify at the trial, as well as that of lay witnesses, to determine the most credible and realistic evidence and the fact finder's determination of the credibility of those witnesses will not be disturbed unless found to be clearly erroneous. Green v. State, Southwest Louisiana Charity Hosp., 309 So.2d 706 (La.App. 3 Cir.1975); Monette v. Aetna Cas. & Sur. Co., 352 So.2d 423 (La.App. 3 Cir.1977). After weighing and evaluating all of the medical evidence, and in most cases the lay testimony, relating to the injuries sustained by a plaintiff, the jury or trial judge may accept *962 or reject the opinion expressed by any medical expert, depending upon how he is impressed with the qualifications and the testimony of that expert. Touchet v. Fidelity and Casualty Co. of New York, 264 So.2d 752 (La.App. 3 Cir. 1972)."
Also, the treating physician's testimony will ordinarily be given greater weight than that of a doctor who examines a plaintiff for diagnosis only. Sepulvado v. Willamette Industries, 459 So.2d 1342 (La.App. 3d Cir.1984). In the instant case, the trial court was apparently most impressed with the testimony of plaintiff's treating physician, Dr. Blanda, and chose to accept his expert medical opinion concerning the nature of plaintiff's disability and the restrictions upon his physical activities as a result of the accident. A reasonable evaluation of the evidence reveals no clear error in the trial court's finding that plaintiff, because of his physical limitations resulting from the accident, is unable to earn ninety per cent of his former wages.
Additionally, the trial court found that plaintiff was not tendered a job by his employer which he could physically perform or which was proven available to him in his community or geographic region. The evidence supports this finding by the trial court. Mr. Doris Barrow, the maintenance foreman for the City of Opelousas Parks and Recreation Department testified that plaintiff's duties included cutting the grass with either a lawn mower or a tractor. On a typical week, plaintiff might spend an average of sixteen hours cutting the grass, most of which involved using the lawn mower. Sometimes, he would have to mow the lawn with the lawn mower for eight hours at a time. Barrow also testified that in preparing the baseball fields plaintiff might have to shovel sand into wheelbarrows and haul them out to the fields. Plaintiff, aided by another park worker, also had to move 100-pound chlorine barrels, for the park pool. Plaintiff also made garbage rounds. These rounds were made throughout the year, and in the summertime, during crawfish season, they were often made three times a week. When full, the barrels could weigh up to one hundred pounds. Plaintiff was also expected to move the stands onto the football field and set up the crowd control fence.
Mr. Barrow testified that with the facilities and resources he had, he could accommodate plaintiff, so that plaintiff would not have to perform repetitive lifting over twenty-five pounds or repetitive bending. He further testified that he contacted plaintiff about returning to work. However, he admitted upon cross-examination that he did not have a position for a laborer who could not pick up garbage, clean the weight room, assist in moving fences back and forth, help unload chlorine or push a lawn mower all day long. He also acknowledged that he had no authority to tender plaintiff a job.
The trial testimony of plaintiff largely corroborated that of Mr. Barrow regarding his work duties. He further testified that after the accident he had returned to work for four days, but could not do the job because his back was hurting and his legs were numb. Plaintiff stated that he had tried doing chores around the house like cutting the grass but was in too much pain to accomplish them. According to plaintiff, he experienced back pain merely as a result of sitting or standing for a long time. He also testified that when the pain in his back flared up, he would have to lie down for two or three hours, or if it was really bad, the entire day. By the time plaintiff was released by his doctor, he had gone through three periods of leave without pay and was automatically terminated by the City of Opelousas.
Mr. Tommy LaFosse was the rehabilitation vocational consultant hired by Travelers Insurance Company to evaluate plaintiff and to assist him with his return to work. He testified that he spoke with a Mr. Pefferkorn, who was superintendent of the Opelousas Civil Service Department and in charge of hiring City employees, concerning whether plaintiff could get his job back. His status report of September 30, 1986, reflects that Mr. Pefferkorn indicated that plaintiff would be put on a waiting list if he was "released without any *963 restrictions." [Emphasis added] However, there was a City hiring freeze and Mr. Pefferkorn could not determine whether or not it would be lifted.
Thus, having carefully reviewed the record, we cannot say that the trial court erred in finding that plaintiff met his burden of proof that he was entitled to supplemental benefits. Plaintiff's prior job as a park worker required heavy lifting, bending and standing for long periods of time. The evidence reveals that he can no longer perform these physical activities. Therefore, plaintiff could not return to his prior job unless it was modified to fit his physical restrictions. However, the evidence shows that no one with authority tendered any employment to plaintiff. The defendants also failed to show the availability of other work which plaintiff was capable of performing. The burden is on the employer to show that such work is available to the employee. Clark, supra.

PENALTIES AND ATTORNEY'S FEES
Plaintiff contends that the trial court erred in not awarding penalties and attorney's fees under LSA-R.S. 23:1201 and 23:1201.2. We disagree. The trial court's decision on penalties and attorney's fees is essentially a question of fact and should not be reversed unless clearly wrong. Fontenot v. Citgo Petroleum Corp., 529 So.2d 69 (La.App. 3d Cir.1988). In order to avoid an award of penalties, the employer must demonstrate that non-payment resulted from conditions over which it or the insurer had no control, or that it or the insurer has reasonably controverted the right to benefits. LSA-R.S. 23:1201(E). The employee's right to such benefits will be deemed reasonably controverted if the employer or insurer had a reasonable basis for believing that medical expenses and compensation benefits were not due the employee. Chelette v. American Guarantee and Liability Insurance, Inc., 480 So.2d 363 (La.App. 3d Cir.1985). Considering the closeness of the issue presented in this case, it is clear that defendant had a reasonable basis to discontinue compensation benefits to plaintiff after September 26, 1986. The medical testimony was contradictory concerning the extent of plaintiff's disability. Drs. Blanda and Laborde indicated that plaintiff could return to light duty work whereas Dr. Heard saw no reason to restrict plaintiff's activities at all. Although the trial court held that plaintiff was entitled to supplemental earnings benefits, there was nevertheless a legitimate dispute on this issue. Thus, we conclude that the trial court did not err in not awarding plaintiff penalties.
Turning to the issue of attorney's fees, we note that LSA-R.S. 23:1201.2 provides that worker's compensation claimants are entitled to reasonable attorney's fees when an employer or the employer's compensation insurer arbitrarily, capriciously or without probable cause discontinues paying compensation benefits. Considering the factual and medical information available to defendants in this case, we find that their actions were not arbitrary and capricious. We therefore find no error in the trial court's denial of attorney's fees.
For the foregoing reasons, the judgment of the trial court is affirmed. The costs of this appeal are assessed to the defendants.
AFFIRMED.