527 So.2d 995 (1988)
Wurry VERCHER, et ux., Plaintiffs-Appellees-Appellants,
v.
FORD MOTOR COMPANY, et al., Defendants-Appellants-Appellees.
No. 87-324.
Court of Appeal of Louisiana, Third Circuit.
May 11, 1988.
*996 Charles Seaman, Natchitoches, for plaintiffs/appellants/appellees.
Provosty, Sadler & DeLauney, David Spence, Alexandria, for defendants/appellees/appellants.
Bolen & Erwin, Charles Munsterman, Alexandria, for defendants/appellees.
Before LABORDE, YELVERTON and KNOLL, JJ.
YELVERTON, Judge.
This reduction of the price award in a suit in redhibition over the purchase of a car is appealed by all parties. The plaintiffs, Wurry and Mable Vercher, husband and wife, appeal a judgment awarding them $3,800 resulting from their purchase of a 1982 Lincoln Continental on October 7, 1982, from defendant, Peter Betts Lincoln-Mercury, Inc. The car, with but 14 miles *997 on the odometer, had been damaged by hail and repaired before title ever left the manufacturer. It was sold to the Verchers without disclosure of this damage, but with disclosure of the fact that there was a slight variation in paint between the hood and the top of the car and the rest of the car. After the sale, peeling and cracking paint problems developed along with other claimed defects, and the Verchers sued the seller and Ford Motor Company, the manufacturer, for rescission of the sale based on redhibition. They also prayed for attorney fees, damages for mental anguish and inconvenience, and damages under the Unfair Trade Practices and Consumer Protection Law, La.R.S. 51:1401 et seq. The trial judge awarded reduction of the price and nothing more. This appeal by the Verchers is from the failure of the trial court to award the full relief for which they prayed.
Peter Betts Lincoln-Mercury, Inc., the seller, also appealed. Its assignments of error as to the award for reduction of the price is that, first, plaintiffs were not entitled to any judgment at all because of the effect of a signed disclaimer of warranty, and second, the award, if any was due, was excessive. The seller argues that it was also error for the trial court to fail to give it a credit for use, as an offset, inasmuch as the car had been driven 48,000 miles by the time of trial, four years after the sale. This defendant also complains that the trial judge failed to make an award to it on its reconventional demand for costs and attorneys' fees against plaintiffs; the reconventional demand is based upon a penalty provision in § 1409 of the Unfair Trade Law, which gives such relief to a defendant against whom a suit is brought under the Law, that is groundless and brought in bad faith or for purposes of harassment.
Ford Motor Company likewise appealed, reiterating the same errors assigned by its codefendant, the seller, and making the additional argument that it should be free of all liability because it made full disclosure of the damage to the car and directed the dealer not to market the vehicle as a new car, by which action it claims it fulfilled its duties under the redhibition laws and thus should be exempt from any liability to the plaintiffs.
The trial judge awarded the plaintiffs a total of $3,800, to be paid half by the seller and half by the manufacturer, and costs. His reasons for judgment conclude with the following explanation of this award:
"The Verchers' numerous complaints about the car include the following: defective hood, paint, and vinyl top; loose speaker; cracked steering wheel and windshield; defective gasket in the sun roof; water leaks in the window; freezing up of the air conditioning; oil leaks; misspelling of the car logo; engine temperature problems; lost hub cap emblem and chrome vents; front end alignment problem; and a manifold intake gasket defect. The plaintiffs have had to take their car back to the dealership on several occasions for repairs, which also involved leaving the car at the dealership for an amount of time totaling several weeks. During the `down time' on the Lincoln, the plaintiffs have had to get other transportation. Mrs. Vercher testified that she agreed to pay her sister $20.00 per day to use her sister's 1977 Mercury while the Lincoln was being repaired, but the rental fees admittedly have not been paid yet.
"The dealership's records indicate that extensive repairs have been done to the car. Among other things, the car has been totally repainted, the hood and steering wheel have been replaced, the lettering has been corrected, the leaking opera window and the vinyl top were repaired, and the carpet was shampooed.
"It should be noted that the vehicle, which is now four years old, has more than 48,000 miles on its odometer, notwithstanding all of the defects complained of. Normal wear-and-tear on the car would necessitate at least some upkeep on the vehicle, and some minor repairs are not unexpected on such a vehicle. On the other hand, the Verchers have had more problems with their car than what they may have bargained for."
The facts surrounding the purchase are rather clear. In October 1982 the Verchers, *998 searching for a new luxury car, were shown this 1982 Lincoln Continental on the seller's new car lot. It had 14 miles on the odometer and a "Maroney" new car sticker in the window showing a price of $25,954. A deal was struck, with the plaintiffs being allowed $8,383 as a trade-in on their 1976 Cadillac which had more than 97,000 miles on its odometer. All parties understood that the Cadillac had a real value of only $1,000. The explanation for the generous trade-in was the "paint variation" condition of the Lincoln.
Unknown to the Verchers, and unknown to the salesman, Harold Klooster, but known to Peter Betts, the owner of the dealership, and to his general manager, Edwin H. Keesler, the top and the hood of this car had suffered sheet metal damage because of hail and had been repaired by Ford Motor Company in Dallas. The title was still in Ford Motor Company when this happened. Peter Betts bought the car from Ford at a Dallas auction. According to the policy of Ford Motor Company, a policy known by the dealership in this case, cars damaged and repaired like this were put in "Category F" and were to be sold as used cars.
Two questions of fact are argued. One is whether the plaintiffs were informed that the car was being sold as a used vehicle. The trial court, while not expressly making a finding of fact as to this issue, apparently believed that the plaintiffs knew the car was being sold as a used car; he commented that the sales slip classified the car as used and the circumstance of the substantial price reduction indicates that the plaintiffs must have known that the car was not being sold as a new one.
The other factual question was not addressed by the trial court, and in our opinion it is the essential fact in the case, for purposes of our resolution of the issues presented. The essential fact is whether the plaintiffs, prior to the purchase, were informed of the hail damage to the sheet metal of the hood and the top. This damage was a defect, ultimately requiring replacement of the hood. Both of the plaintiffs testified that they were not told of that prior damage, and the testimony of the witnesses for the defendant supports the plaintiffs' testimony as to this fact. Peter Betts testified that although he had no recollection of this specific sale, on a used vehicle sale the dealership would not have advised the Verchers that it had been repainted, nor was it their policy to advise a purchaser that an automobile had been damaged, if it was classified as a used vehicle. He admitted that it was standard policy that the customer would have bought this car not knowing that it had been damaged, repaired and repainted. The deposition of the salesman, Harold Klooster, indicates that he never told the Verchers there had been sheet metal damage, simply because he was not aware of that fact. He stated that he was aware of the paint deviation because he could see that, although this was not something that would be readily apparent to the untrained eye. Thus, our examination of the record reveals that not only did the seller fail to inform the Verchers that the paint deviation was the result of hail damage repairs, but according to dealership policy there was a deliberate concealment of that fact. We accordingly conclude that the seller knew and did not declare that the vehicle suffered from prior damage that had been repaired.
Not long after the purchase the plaintiffs discovered that the paint on the hood was flaking and peeling, and that there were other defects appearing. It was during the resulting contacts with the dealer that they learned of the prior hail damage and repairs.
Suit was filed on September 19, 1983, asking for a rescission of the sale, alleging that the car had suffered undisclosed damage before the sale, that there were paint defects, a rear window leak, a faulty defroster, and other defects. An exception of prescription of one year was filed by defendants, claiming prescription under both the redhibition laws and under the Unfair Trade Law. The exception was overruled. During the pendancy of the suit additional defects were pointed out by amending petitions. While the suit was pending, all of the listed defects were repaired, including *999 the installation of a new hood and a complete repainting of the car.
The replacement of the hood was apparently inevitable, as one knowledgeable witness testified that hail damage on a hood cannot be successfully repaired, and that any hood so damaged and repaired, would ultimately have to be replaced.
We will now proceed to address the issues raised by this appeal.
DISCLAIMER OF WARRANTY
Among the papers the Verchers signed at the sale was an "as is" disclaimer of warranty. The Verchers admitted their signature, but denied that they knew what they were signing, or that it was called to their attention or explained to them. Other papers they signed at the time included an "Acknowledgment Of Receipt Of [Manufacturer's] Warranty Materials", which included a warranty facts booklet. The seller contends that under these circumstances it owed no warranty obligation at all. We reject this contention. One of the principal obligations the law imposes on the seller is the warranty against redhibitory defects. La.C.C. arts. 2475 and 2476. For the waiver of a buyer's warranty against redhibitory defects to be effective it must be clear and unambiguous. La.C.C. art. 2474. The renunciation also must be read and explained to the buyer. Prince v. Paretti Pontiac Co., 281 So.2d 112 (La.1973). The salesman in the present case, Harold Klooster, could not remember whether or not he specifically addressed the disclaimer subject at the closing of the sale. We agree with the trial court's apparent conclusion that the Verchers did not waive their rights under the redhibition articles by signing the disclaimer of warranty.
THE AWARD
In our opinion reduction of the price was proper under the facts of this case. It was not error to refuse to award rescission of the sale. Redhibition takes place when the vice or defect renders the thing sold absolutely useless, or its use so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it had he known of the vice. La.C.C. art. 2520. The Verchers did not know the cause of the paint defect nor did they know that it would get worse, but they knew there was a paint imperfection, for the seller told them; they bought the car nonetheless. For this reason they cannot maintain the redhibitory action on account of the paint problem. La.C.C. art. 2522. We likewise agree with the trial court that the cumulative effect of this and the other defects did not justify rescission, especially considering that the owners drove the car 48,000 miles over a period of four years. Nelkin v. Piotrowski, 448 So.2d 173 (La. App. 5th Cir.1984).
On the other hand, the court was within its authority to decree a reduction of the price. La.C.C. art. 2543. The diminution in price which the trial court may decree is the difference between the sale price and the price a reasonable buyer and seller would have agreed upon if they had known of the defects. Ball v. Ford Motor Co., 407 So.2d 777 (La.App. 1st Cir.1981). In determining the amount of the reduction, much discretion is left to the trial judge. Guillory v. Pitre Ford Co., 345 So.2d 1274 (La.App. 3rd Cir.1977). Measured by these standards we have no hesitancy in concluding that the award of $3,800 is supported by the facts in the record and is not an abuse of discretion.
DAMAGES FOR MENTAL ANGUISH AND HUMILIATION
The Verchers complained that no award was made for mental anguish and humiliation. They cite Bourne v. Rein Chrysler-Plymouth, Inc., 463 So.2d 1356 (La.App. 1st Cir.1984), writ den. 468 So.2d 570 (La.1985), as authority for granting these damages in a redhibitory action. This circuit has not adopted the Bourne view. This circuit continues to follow the rule of Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La.1976), that mental anguish and humiliation is not recoverable in this type of action. See Laughlin v. Fiat Distributors, Inc., 368 So.2d 742 (La.App. 3rd Cir.1979).
The Verchers have a remedy for these damages, however, against the seller *1000 under the Unfair Trade Law. La.R.S. 51:1405 makes it unlawful to engage in any unfair or deceptive act or practice in the conduct of any trade or commerce. La.R.S. 51:1409 gives a right of action to recover actual damages to any person who suffers any ascertainable loss of money or moveable property as a result of such unfair or deceptive act or practice. A practice is unfair when it "offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Coffey v. Peoples Mortgage & Loan of Shreveport, 408 So.2d 1153 (La.App. 2nd Cir. 1981). The determination of whether an act or practice is unfair is left to the courts. Id.
Interpreting the Unfair Trade Law this circuit, in Gour v. Daray Motor Co., Inc., 373 So.2d 571 (La.App. 3rd Cir.1979), writ granted 376 So.2d 1270 (La.1979), writ dismissed in light of compromise settlement, 377 So.2d 1033 (La.1979), held that the seller was guilty of an unfair trade practice when it failed to adequately disclose to the buyer of a new Oldsmobile that the car contained a Chevrolet engine.
In the present case, based on the testimony and the circumstances, the handling of the paint condition at the time of the sale was a deliberate concealment. This apparently new car, with but 14 miles on the odometer, was offered for sale at a savings of several thousand dollars, and the explanation given for the substantial decrease in the price was that it had a paint variation. The salesman testified that the variation would not have been noticeable to the untrained eye. It was represented, however, (along with the implication that this imperfection occurred at the factory), that the paint variation was all that was wrong with the vehicle. That was not all that was wrong. Not disclosed was the fact that the reason for the paint variation was hail damage to the hood and top, and subsequent repair and repainting, after the vehicle left the factory. Disclosure of that fact could have influenced the transaction. Its importance is demonstrated by the fact that the damage quickly manifested itself in the form of cracking and peeling paint. One knowledgeable witness said hail damage on a hood cannot be successfully repaired, and that the solution is the replacement of the hood and probable repainting of the entire vehicle. Failure of the dealer to disclose this known defect was both unfair and deceptive, and in our opinion was in violation of R.S. 51:1405. This amounted to a misrepresentation or a failure to disclose a material fact which, had it been known, might have caused the buyer to take a different position with respect to the sale.
The Unfair Trade Law provides for the recovery of actual damages, which, according to Bank of New Orleans & Trust Co. v. Phillips, 415 So.2d 973 (La.App. 4th Cir. 1982), includes mental anguish and humiliation.
The record is before us and it is complete and we will decide the question of damages for mental anguish and humiliation. In our view the circumstances justify an award of $2,500 jointly to the plaintiffs. This award, however, is against the seller, Peter Betts, only. There is no evidence that Ford Motor Company participated in any way in the unfair act and deception. See Gour v. Daray Motor Car Co., Inc., supra at p. 579.
THE VERCHERS' DEMAND FOR ATTORNEYS' FEES
Based upon our determination that the seller knew of the defect and omitted to declare it to the buyer, it is also our opinion that the trial court erred in not awarding the plaintiffs attorneys' fees. Both the redhibition laws and the Unfair Trade Laws provide for the recovery of attorneys' fees in these circumstances. The seller who knows the vice of the thing he sells and omits to declare it is answerable for reasonable attorneys' fees. La.C.C. art. 2545. Peter Betts knew the car had received hail damage and repairs, as the reason for the paint variation, and did not declare that vice. It owes attorneys' fees and Ford Motor Company as the manufacturer, is likewise liable. We fix attorneys' fees in the amount of $3,000.
*1001 CREDIT FOR USE
The seller claims that it should be awarded a credit against the judgment for the use of the car that the plaintiffs enjoyed over an extended period of time. This demand was properly rejected by the trial judge. Credit for use is not available in cases awarding only reduction of the price. Weber v. Crescent Ford Truck Sales, Inc., 393 So.2d 919 (La.App. 4th Cir. 1981), writ den. 400 So.2d 667 (La.1981).
SELLER'S RECONVENTIONAL DEMAND
The seller has also raised the issue of prescription of the Vercher's Unfair Trade Law claim as the basis for its reconventional demand for damages against the Verchers. R.S. 51:1409(E) of the Unfair Trade Law provides that the private action for damages therein created prescribes by one year running from the time of the transaction or act which gave rise to the right of action.
The sale occurred on October 7, 1982, and the supplemental and amending petition which contained the Unfair Trade Law claim was not filed until May 7, 1985. Therefore, the seller argues, this action was prescribed. For the reasons that follow, this court will pretermit the question of prescription. However, this does not prevent us from rejecting defendant's reconventional demand for other reasons.
Unfair Trade Law § 1409 gives a defendant a retaliatory right to attorney's fees and costs, when a § 1409 action is unsuccessfully brought against him, and it is found that the action is groundless and brought in bad faith or for purposes of harassment. The seller in the present case argues that the Vercher's action brought against it was groundless because it was prescribed, that the Verchers knew it was prescribed, and that therefore the action was brought in bad faith and for the purpose of harassment.
The defendant assigns as error the failure of the trial court to award it attorney's fees and costs. This assignment of error lacks merit because this court has ruled in favor of plaintiffs on their § 1409 action. Therefore, an essential element of the seller's claim, an unsuccessful § 1409 action, is absent. However, even if the seller's conduct did not constitute an Unfair Trade practice, its reconventional demand would still fail. Since the Verchers had a meritorious redhibitory action, another claim brought on the basis of the same facts cannot be groundless or for purposes of harassment. The reconventional demand was based solely upon prescription. We have rejected that demand for other reasons. As a result, a discussion of when prescription begins to run on an Unfair Trade Law claim is unnecessary.
MANUFACTURER'S LIABILITY
Ford Motor Company makes the novel argument that it should be free of all liability because it made full disclosure to the seller of the hail damage to the car. Accordingly, the argument concludes, the manufacturer satisfied its obligations under the redhibition articles of the civil code and thus should be immune from liability to the plaintiffs. This claim is not supported by the redhibition laws nor the jurisprudence and must be rejected.
Initially it must be noted that the hail damage was only one, although the most severe, of many defects in the vehicle. The hail damage was, however, the only defect that Ford Motor Company revealed to the dealer. Therefore, disclosure of this defect by the manufacturer could not affect its liability to the purchasers for the other defects which existed.
Ford Motor Company argues that since it disclosed the defect to the seller it satisfied its duties under the redhibition articles. We do not subscribe to this argument. La.C.C. art. 2531 is the only redhibition article that discusses the manufacturer's liability for a defective product. Art. 2531 provides in pertinent part:
"In any case in which the seller is held liable because of redhibitory defects in the thing sold, the seller shall have a corresponding and similar right of action against the manufacturer of the thing *1002 for any losses sustained by the seller..."
In Millin v. Dawson, 387 So.2d 1213 (La.App. 1st Cir.1980), the court rejected a similar argument by a manufacturer in a redhibitory action by concluding:
"Celtic's claim that the manufacturer should escape liability for the defects if the dealer learns of the defects prior to the sale to the ultimate customer is untenable. The fact that the seller also knows of the defects in the thing that the manufacturer has manufactured has no effect on the relationship between the dealer and the manufacturer. Under La. C.C. art. 2531, in any case in which the seller is held liable for redhibitory defects (or a reduction in the price in damages), the seller has a right to indemnity against the manufacturer for the damages he is required to pay to the consumer."
In its brief, Ford Motor Company cites La.C.C. art. 2522 as being pertinent to this issue. Art. 2522 provides:
"The buyer can not institute the redhibitory action, on account of the latent defects which the seller has declared to him before or at the time of the sale. Testimonial proof of this declaration may be received."
We cannot perceive the relevance of this article to the manufacturer's liability. The article discusses only the relationship between the buyer and the seller. There is no evidence in the record that the dealer declared the defect to the plaintiffs prior to the sale. On the contrary, the record reveals that the seller deliberately concealed the defective condition of the vehicle from the purchasers. It cannot be concluded that because Ford Motor Company disclosed the defect to the seller, the seller necessarily revealed this to the Verchers. The evidence in the record does not support this assumption.
For the reasons assigned, the judgment of the trial court is amended to award the plaintiffs $2,500 as damages for mental anguish and humiliation, this item of the award against defendant, Peter Betts Lincoln-Mercury, Inc., only.
The judgment is further amended to award the plaintiffs a total of $3,000 as attorneys' fees against both defendants, in solido.
In all other respects the judgment of the trial court is affirmed.
The defendants will pay the costs of appeal, equally.
AMENDED AND AFFIRMED.