Charles SAFFORD, et al.

v.

**PAINEWEBBER, INC.**

**Civ. A. No. 89–4925.**

United States District Court,
E.D. Louisiana.

Feb. 8, 1990.

James E. Stovall, Jackson & Stovall, New Orleans, La., and Lionel F. Price, Slidell, La., for plaintiffs.

Lloyd Eades Hogue, Thomas Michael Keiffer and Kenneth Anthony Mayeaux, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, La., for defendant.

## ORDER & REASONS

FELDMAN, District Judge.

Plaintiff Charles Safford was employed by defendant PaineWebber as an investment executive and stock broker from March, 1982 through March 25, 1985. After his termination from employment, plaintiff was investigated by the Chicago Board of Options Exchange. The investigation was allegedly prompted by defendant's statements on the "U–5 form" that it sent to the National Association of Securities Dealers. As a result of the investigation, the C.B.O.E. accepted an offer of settlement in a letter dated May 4, 1987 in which plaintiff agreed to a five day suspension. On September 4, 1987, plaintiff filed suit in state court against F.J. Schultz, plaintiff's former superior at PaineWebber, alleging that he made defamatory statements about plaintiff during the investigation to the effect that plaintiff was involved in child pornography and that he was having an affair with his former secretary. Plaintiff claims that in the course of discovery in that suit, by letter dated October 20, 1988, plaintiff received from defendant a copy of the U–5 form which it had filed with the N.A.S.D.

Upset by the circumstances of his resignation from PaineWebber and the investigation by the C.B.O.E., plaintiff filed this suit against PaineWebber on October 19, 1989 alleging several theories of recovery. Plaintiff claims that defendant made false accusations in the U–5 form which are defamatory and constitute an invasion of privacy; that defendant intentionally and negligently breached a fiduciary duty owed to plaintiff to insure that he was in compliance with all relevant securities regulations; that the actions taken by defendant constitute an unfair trade practice; and that defendant is jointly and solidarily liable with F.J. Schultz for his defamatory statements about pornography and sexual misconduct. Plaintiff's wife, Janice Safford, and a minor child, Ryan Safford, also claim loss of consortium and society. PaineWebber now moves for summary judgment.

## I.

Defendant seeks summary judgment on plaintiff's claims that false accusations in the U–5 form are defamatory and constitute an invasion of privacy on the ground that these claims have prescribed. Claims for defamation and invasion of privacy sound in tort and are therefore subject to the one year prescriptive period for delictual actions set out in La.C.C. Art. 3492. *Rozas v. Department of Health and Human Resources,* 522 So.2d 1195 (La.App. 4 Cir.1988) writ denied, 523 So.2d 1338 (La. 1988). Since the U–5 form was submitted in 1985 and this action was commenced in 1989, plaintiff's claims arising out of the filing of that form have prescribed unless prescription was somehow interrupted.

The Louisiana doctrine of *contra non valentem* prevents the running of liberative prescription in certain situations. This doctrine applies where the cause of action is not known or reasonably knowable by the plaintiff. *See Matthews v. Sun Exploration & Prod.,* 521 So.2d 1192 (La.App. 2 Cir.1988). However, it is not necessary that plaintiff actually know of the facts giving rise to his cause of action for prescription to run. The plaintiff need only have notice enough to excite his attention and call for inquiry; knowledge that "ought to reasonably put the owner on inquiry is sufficient to start the running of prescription." *Cartwright v. Chrysler Corp.,* 255 La. 597, 232 So.2d 285 (1970). Nevertheless, prescription does not begin to run "at the earliest possible indication that a plaintiff may have suffered some wrong." *Jordan Employee Transfer Corp.,* 509 So.2d 420, 423 (La.1987). It starts when one "has a reasonable basis to pursue a claim against a specific defendant." *Id.,* at 424.

In this case, plaintiff argues that he did not know of the statements made in the U–5 form until he received a copy of it on October 24, 1988 and, consequently, his claim had not prescribed by the time he filed this action on October 19, 1989. Defendant, on the other hand, contends that plaintiff was aware of the defamation no later than October 4, 1987, when plaintiff testified in a deposition, in connection with his state suit against Schultz, that he knew that the C.B.O.E. investigation had been triggered by statements from his superior at PaineWebber, that he believed the allegations against him were false, and that he believed that he had suffered as a result of the investigation. Defendant contends that these admissions establish that plaintiff had actual or constructive knowledge of the facts giving rise to this defamation claim and, therefore, that this defamation and invasion of privacy claim prescribed on October 4, 1988.

Plaintiff asserts in response that the U–5 form contained accusations of wrongdoing totally unrelated to the violations for which he was sanctioned. He says he had no knowledge of the U–5 representations or reason to suspect that he had been defamed by these statements. And his lack of awareness, plaintiff claims, was not due to negligence, for he was diligently pursuing his rights.

This case presents circumstances similar to those in *Neyrey v. Lebrun,* 309 So.2d 722 (La.App. 4 Cir.1975) where the court held on similar facts that the plaintiff's suit had prescribed. *Neyrey* was based on an alleged defamatory letter which was sent to the Louisiana State Bar Association by the defendants in response to a charge filed against them by the plaintiff. The plaintiff did not receive a copy of the letter, but was notified that a response had been filed. Over a year after defendants' letter had been received by the Bar Association, the plaintiff learned of its contents. The court held that prescription commenced to run from the date of defendants' letter and not from the date plaintiff learned of its contents. The court noted that the plaintiff had received notice of a response but chose not to inquire into its content. Lack of awareness, the court found, was caused by the plaintiff's negligence in not making inquiry into the content of the response. *Neyrey* is strikingly close.

As in *Neyrey,* prescription in this case commenced to run when plaintiff received notice that documents had been filed by defendant. In his deposition on October

4, 1987, plaintiff testified that he was told by someone at the C.B.O.E. that his superior at PaineWebber, Schultz, had filed papers pertaining to his dealings with two PaineWebber customer accounts which activated an investigation by the Board. That testimony clearly establishes that by October 4, 1987, plaintiff was on notice that statements had been filed about him pertaining to his termination, and he has admitted he felt aggrieved by the investigation which resulted from those statements. These facts are sufficient to satisfy Louisiana law's reasonable basis threshhold. Consequently, prescription began to run on October 4, 1987 as to the statements made by defendant through Schultz in the U–5 form. Plaintiff urges the Court to find that prescription began to run from the date on which he became aware of the content of those statements. Such a finding is contrary to the teaching of *Neyrey,* and not justified by the facts of record.

If plaintiff was prevented from obtaining copies of the allegedly defamatory statement as was the case in *Youngblood v. Dettenheim,* 352 So.2d 265 (La.App. 2 Cir. 1977), writ denied, 354 So.2d 211 (La.1978), the failure to obtain the statement earlier would not be due to his own neglect. But, here, plaintiff does not claim that he was prevented from obtaining a copy of the U–5 form. Rather, in his affidavit, plaintiff states that he requested portions of his personnel file, and though defendant would not give him the file, it did send him a copy of the U–5 form. Thus, as in *Neyrey,* it is plaintiff's own failure to make an earlier inquiry about the content of defendant's statements that caused the lack of awareness that he says prevented him from earlier bringing suit. Plaintiff had a duty to inquire as to the contents of defendant's statements when he was told that defendant had filed documents regarding his termination. *Neyrey,* 309 So.2d at 723.

Because the record establishes that prescription commenced to run, at the latest, on October 4, 1987, plaintiff's claims for defamation and invasion of privacy arising out of the U–5 form have prescribed.

II.

Plaintiff's second claim is that defendant breached its fiduciary duty to plaintiff to supervise and insure that he was in compliance with all applicable securities regulations. Defendant seeks summary judgment on plaintiff's breach of fiduciary duty claim on the ground that defendant owed plaintiff no fiduciary duty.

A fiduciary in Louisiana is "a person holding the character of a trustee, or a character analogous to that of a trustee, with respect to the trust and confidence involved in it and the scrupulous good faith and candor which it requires." *State v. Hagerty,* 251 La. 477, 205 So.2d 369 (1967) (citing 36A C.J.S. Fiduciary, p. 381) cert. denied, 391 U.S. 935, 88 S.Ct. 1848, 20 L.Ed.2d 855 (1968). One is said to act in a fiduciary capacity when the business which he transacts "is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other part." *Id.* (citing Black's Law Dictionary, Fourth Edition (1951)).

 Defendant argues that there is no support in the law for a fiduciary duty owed by an employer to an employee. The Court agrees. Plaintiff maintains that defendant's fiduciary duty to plaintiff arises out of its statutory obligation to oversee plaintiff's compliance with federal regulations, but the cases cited by plaintiff do not support this contention. For instance, *Plaquemines Par. Com'n Council v. Delta Development Co., Inc.,* 502 So.2d 1034 (La.1987), refers only the duties owed by public officers to the public and by attorneys to their clients; it does not support the notion that an employer owes a fiduciary duty to its employees. Nor does *ODECO v. Nunez,* 532 So.2d 453 (La.App. 1 Cir.1988), writ denied, 535 So.2d 745 (La. 1989), impose a fiduciary duty here. In that case, the defendant acted in conflict with his employer by forming his own company and using his position with his employer to enhance his private business. After noting that an employee has a duty not

to act contrary to the business interest of his employer, the court held that the employee had breached his contractual duty of fidelity and loyalty to his employer. Finally, *United Companies Mtg. v. Estate of McGee*, 372 So.2d 622 (La.App. 1 Cir.1979), establishes only that an intermediary who negotiates a transaction between two parties is held to a fiduciary obligation to perform his duties faithfully for both parties.

The relationship between the disputants in this case is not similar to those relationships found in the case literature mentioned which give rise to fiduciary obligations. PaineWebber may have a statutory obligation to safeguard its employees' compliance with the relevant securities regulations, but that obligation does not have the characteristics of a fiduciary duty. PaineWebber is not in a unique position of trust, as is a public official or an attorney, nor is it acting for the benefit of plaintiff so that it must be faithful to plaintiff's financial or business interests. Plaintiff himself is obligated to comply with all securities regulations. Indeed, if PaineWebber has any duty, it would seem to run in favor of those agencies charged with supervision of the securities industry.

Because plaintiff has failed to establish that defendant owed him a fiduciary duty, defendant's motion for summary judgment must be granted as a matter of law on plaintiff's claim for breach of fiduciary duty.

### III.

Plaintiff's third claim is for unfair trade practice. Defendant moves for summary judgment on this claim on the ground that plaintiff's claim is perempted. An action provided by the Louisiana Unfair Trade Practices Act "shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action." La.R.S. 51:1409(E). Defendant maintains that the one-year limitation period is peremptive in nature.

Indeed, in *Canal Marine Supply v. Outboard Marine*, 522 So.2d 1201 (La.App. 4 Cir.1988), the court held that the one-year period of R.S. 51:1409(E) was peremptive and therefore not subject to interruption or suspension. However, plaintiff claims that *Vercher v. Ford Motor Co.*, 527 So.2d 995 (La.App. 3 Cir.1988), holds to the contrary. In *Vercher*, the plaintiff filed suit on September 19, 1983, seeking to rescind a sale that occurred less than a year earlier. More than a year later, the plaintiff amended his complaint to add an Unfair Trade Law claim. The seller argued that the Unfair Trade Law claim was prescribed, but the court said that "a discussion of when prescription begins to run on an Unfair Trade Law claim is unnecessary." *Id.*, at 1001. *Vercher* does not hold that the one-year limitation period in the Unfair Trade Practices Act is prescriptive rather than peremptive; it expressly declines to address the issue.

Following *Canal Marine Supply*, the only case to directly speak to the question of the nature of the limitation period in the Unfair Trade Practices Act, the Court finds that the statutory limitation period is peremptive in nature. Because the doctrine of *contra non valentem* does not apply to a peremptive period, plaintiff's unfair trade practice claims based on acts that occurred over a year before suit was filed must be dismissed. *See Canal Marine Supply*, 522 So.2d at 1203.

Plaintiff filed this suit on October 19, 1989. Thus, any unfair trade practice claim must be based on acts that occurred after October 19, 1988. In this case, all of the questioned acts occurred well before October 19, 1988: Plaintiff's employment with PaineWebber terminated in March of 1985, and the C.B.O.E. ended its investigation on May 4, 1987. The alleged unfair trade practices ended, at the latest, with the conclusion of the C.B.O.E. investigation. Plaintiff complains of no events that occurred after that date. Because the alleged unfair trade practices occurred more than one year before plaintiff filed this suit, his unfair trade practice claims are perempted.

### IV.

Plaintiff's final claim is that defendant is jointly and solidarily liable with F.J.

Schultz for his defamatory statements that plaintiff engaged in operating a child pornography ring and that he left his wife to live with his former secretary. In his state court complaint against Schultz, plaintiff contends that he learned of Schultz's statements on September 8, 1986. Accordingly, this defamation claim against PaineWebber has prescribed on September 8, 1987, unless prescription was interrupted.

Civil Code Art. 1799 provides that "[t]he interruption of prescription against one solidary obligor is effective against all solidary obligors and their heirs." Thus, the filing of suit against one obligor interrupts prescription against all solidary obligors. *Burton v. Foret*, 498 So.2d 706 (La.1986). However, the filing of suit interrupts prescription only on that cause of action. *Louiviere v. Shell Oil Co.*, 440 So.2d 93 (La.1983).

█ Plaintiff's complaint clearly makes two separate defamation claims. In paragraph IX, plaintiff says that the statements in the U–5 form defamed him. The argument over the U–5 form claim has been dealt with in Section I. In paragraph XXIII, he adds, however, that Schultz's statements implicating him in child pornography and an extra-marital affair also defamed him. The claim based on Schultz's pornography and sexual misconduct statements clearly asserts the same cause of action as the state court suit based on those same statements. Plaintiff's complaint goes so far as to refer to the docket number of the state court suit and to assert PaineWebber's solidary obligation.

Because plaintiff's state court suit against Schultz dealing with the subjects of pornography and sexual misconduct asserts the same cause of action as his claim against PaineWebber here, the timely filing in state court of suit against Schultz interrupted prescription as to PaineWebber on this limited claim.

## V.

█ Janice Safford and Ryan Safford claim loss of consortium and society as a result of defendant's deeds. Defendant urges that these claims have also pre-

scribed. But the claims for loss of consortium and society did not necessarily arise at the same time as Charles Safford's claim arose. Rather, they "arose when [his wife and child] suffered the actual loss of consortium, society and service" of Mr. Safford. *Coates v. Owens–Corning Fiberglass Corp.*, 444 So.2d 788, 790 (La.App. 4 Cir.1984). Until Mr. Safford's family is actually deprived of his consortium, service, or society, they have suffered no injury. *Id.*, at 790.

The deposition testimony submitted by defendant does not conclusively establish when Safford's family suffered loss of consortium and society. Mrs. Safford testified in her deposition that hearing of the alleged statements by Schultz caused her anxiety and stress. However, when asked when she first heard of the statements, she responded, "I don't remember at all." Furthermore, defendant presented no evidence at all regarding the effects of the statements contained in the U–5 form. Because there remains a genuine issue of fact as to when prescription on the loss of consortium claim began to run, defendant's motion for summary judgment on that claim must be denied.

## VI.

For the foregoing reasons, defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part.

Defendant's Motion for Summary Judgment is GRANTED as to Mr. Safford's claims for defamation and invasion of privacy based on the U–5 form filed by defendant, for breach of fiduciary duty, and for unfair trade practices.

Defendant's Motion for Summary Judgment is DENIED as to Mr. Safford's claim for defamation based on statements made by F.J. Schultz regarding pornography and sexual misconduct, and as to his family's claim for loss of consortium and society.