610 So.2d 252 (1992)
Agnes A. JESSEN, Plaintiff-Appellant,
v.
DR. KENNETH W. WIMBERLY, D.D.S., a Professional Dental Corporation, Defendant-Appellee.
No. 91-1299.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1992.
*253 Bradley J. Gadel, Alexandria, for plaintiff-appellant.
Richard E. Gerard, Jr., Lake Charles, for defendant-appellee.
Before LABORDE, THIBODEAUX and CULPEPPER[*], JJ.
THIBODEAUX, Judge.
Agnes A. Jessen brought this suit in redhibition against Dr. Kenneth W. Wimberly, D.D.S., a Professional Dental Corporation, to rescind her purchase of a new denture mold base. At the conclusion of the trial in Lake Charles City Court, the trial judge took the matter under advisement and ultimately found in favor of the defendant, dismissing plaintiff's claims.
Plaintiff appeals and asserts the following assignments of error: (1) the trial judge erred in holding that plaintiff did not prove her case by a preponderance of the evidence. Assignment of error number one encompasses Jessen's claims that the relined denture mold base of the lower dentures was defective, the sale of which is subject to rescission, and her second claim that Dr. Wimberly's actions in collecting a debt which she did not owe, constituted an unfair trade practice in violation of LSA-R.S. 51:1409(A). The second assignment of error is that the trial judge erred not stating any facts or substantive reasons to support his ruling. For the reasons set forth below, we affirm.

FACTS
On April 3, 1990, Jessen, a 66 year old retired waitress who has been wearing dentures since the age of 22, entered into an installment contract with Dr. Wimberly for the purchase of a new denture mold base which would utilize the teeth of the dentures she had been wearing for the past 15 years, replacing one tooth that was missing from the set. For economic reasons, Jessen chose to have a reline done rather than to have Dr. Wimberly construct an entirely new set of dentures. On that same day, Dr. Wimberly took an impression of Jessen's bite using the existing 15 year old denture as a mold for the relined dentures. On the day Jessen picked up her dentures, she made a down payment of $100.00 and promised to pay the balance of the purchase price, $225.00, before May 1, 1990. The total bill was $325.00.
Jessen testified that she immediately experienced problems with the fit of her dentures. Whenever she chewed, drank coffee or talked, the lower denture would become dislodged in her mouth. She returned to Dr. Wimberly's office a few times where he administered adjustments to the dentures. Jessen is uncertain as to the number of times she returned to the office for adjustments *254 to the dentures. Documentation, by way of appointment books and sign-in sheets, kept by Dr. Wimberly's employees, shows that Jessen visited the office eight times, with six of those visits occurring after the dentures were placed in her mouth. Witnesses for both plaintiff and defendant claim that a denture patient's need to return to the dental office several times for denture adjustments is not uncommon. Jessen testified that despite repeated visits for adjustments, she continued to experience problems eating with the dentures. Jessen admits that after the first 3 or 4 days when she could not eat solid food, she had gotten upset and did not return to Dr. Wimberly's office for adjustments as often as she should have. Her visits to Dr. Wimberly's office ended sometime in June of 1990.
In August of 1990, Jessen contacted Mark Snowden, a dental technician and a fabricator of dental appliances and owner of Louisiana Dental Center in Oakdale, Louisiana. Jessen explained to Snowden the problems she was experiencing with her dentures. Mark Snowden, a witness for the plaintiff, surmised that the bite registration taken by Dr. Wimberly was inaccurate. After Snowden's diagnosis of the problem, he proceeded to construct a new set of dentures.
Dr. Steve Chapman, a dentist, examined both sets of dentures and concluded that there were several reasons the dentures constructed by Dr. Wimberly could have an inaccurate bite registration. It was difficult to determine exactly what caused the bite inaccuracies.
Dr. Wimberly testified that a person who has been wearing dentures for as long as Jessen has (approximately 40 years) is going to have problems with dentures because the longer a person wears dentures, the smaller the lower ridge of the gums become. Sometimes, the bite of a patient is not correct, but the denture wearer has become accustomed to the bite; therefore, even with a new denture that corrects the bite, the patient will feel uncomfortable. In addition, Dr. Wimberly testified that the denture may fit the gum of the denture wearer perfectly, but the bite will not mesh, which is the reason a patient may return many times for adjustments. In other words, a bite correction, realignment of the patient's jaw, must be done in stages. The mold used for Jessen's relined dentures was made by getting a bite impression while the 15 year old dentures were in Jessen's mouth.
It is not contested that Jessen paid the balance of $225.00 by check dated April 30, 1990, in satisfaction of her agreement to pay for her dentures before May 1, 1990. Because of an error in Dr. Wimberly's billing procedure, Jessen continued to be erroneously billed for several months for $225.00, plus penalties for late payments in the latter months. Jessen received several computer generated billing statements showing a balance due and requesting payment. Jessen testified that she was called at her place of employment by one of Dr. Wimberly's employees who inquired about payment of the bill. Testimony by Dr. Wimberly's dental assistant, Ms. Cook, was that she called to confirm where Jessen was employed so that she would have that information for future reference should additional actions have to be taken to collect the debt. At no time did Jessen bring or mail a copy or original of either the cancelled check or patient receipt, although she claims to have visited Dr. Wimberly's office with a copy of the first billing statement contesting its validity and offered to bring the cancelled check and/or patient receipt. This would have immediately made known to Cook that there was a wrong number on the account and could have shown Jessen's account as being paid, ending the erroneous billing. When the dental assistant was told by Jessen that she was not going to pay the bill and that she was not satisfied with the dentures, she proceeded, on February 15, 1991, with the next step in the billing process, the mailing of a certified letter requesting payment or that arrangements for payment be made. When told by Jessen that suit was being filed against Dr. Wimberly, Cook ended all billing statements and letters. Upon receipt from Jessen's attorney of Jessen's April 30, 1990 cancelled check, Cook *255 was immediately able to inspect the account and determine that the billing problem was due to a typographical error which changed one of the numbers in the account and caused Jessen's payment to appear in another patient's account records.
On March 15, 1991, Jessen filed this action claiming redhibitory defects in the dentures constructed by Dr. Wimberly and a violation of the Louisiana Unfair Trade Practices Act because of the billing procedures used.
Defendant answers plaintiff's appeal with a request for costs and attorney's fees, asserting that the appeal is frivolous and without any valid basis in fact or in law.

SCOPE OF REVIEW
In Louisiana, appellate review in civil cases extends to both law and facts. La. Const. of 1974, art. V, § 10(B). Canter v. Koehring Company, 283 So.2d 716, 724 (La.1973) teaches that:
"... [T]he reviewing court must give great weight to the factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable...."
Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978) states that, "the appellate court should not disturb [the trial judge's or jury's] findings of fact unless it is clearly wrong." It expanded on the thought in pertinent part, as follows:
"... Therefore, the appellate review of facts is not completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court; there must be a further determination that the record establishes that the finding is not clearly wrong [manifestly erroneous]."
When the trial court's findings are based on determinations regarding the credibility of witnesses, the manifest error, clearly wrong standard demands great deference to the trier of fact's findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Canter, supra, at 724; Rosell v. Esco, 549 So.2d 840 (La. 1989). Where a fact finder's finding is based on its decision to credit the testimony of one or two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. See, Rosell, supra, at 845.
Holmes v. Southeastern Fidelity Insurance Co., 422 So.2d 1200 (La.App. 1 Cir. 1982), writ denied, 429 So.2d 133 (La.1983) clearly states the principle of evaluating testimony in the following terms:
"... In reaching conclusions, the finder of fact need not accept all of the testimony as being true or false and may believe and accept a part or parts of a witness' testimony and refuse to accept any part or parts thereof. The opinions of expert witnesses are not binding on the finder of fact and are to be weighed the same as any other evidence ... The fact finder's evaluation of expert and lay testimony will not be disturbed unless found to be clearly wrong." Holmes at 1203.
This case record is made up of testimony taken in open court and depositions of a dental technician and a dental surgeon. When evaluating the testimony adduced in open court, we must follow the rule enunciated in Canter and Arceneaux because the trial judge is in a better position to evaluate the credibility of the witnesses (as compared with an appellate court's access to a cold record). The Canter and Arceneaux rule applies also when a judge relies on the deposition of a witness. See, Virgil v. American Guarantee and Liability Insurance Company, 507 So.2d 825 (La. 1987); Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992).
At this juncture, we will address the sufficiency of the trial judge's written reasons for judgment which stated:
"The court rendered judgment in favor of defendant and against plaintiff, because plaintiff failed to show by a preponderance of the evidence that they *256 were entitled to the relief that they sought."
Plaintiff claims that the written reasons for judgment are insufficient given that a request pursuant to LSA-C.C.P. art. 1917 was accomplished. Plaintiff argues that the trial court's written reasons for judgment do not meet the demands of LSA-C.C.P. art. 1917 and, therefore, the trial judge's decision is not entitled to the deference ordinarily given by appellate courts to the trier of facts.
A general finding of credibility fulfills the function of a lower court as the trier of fact. It is not necessary that detailed findings on each issue of credibility be made where testimony is conflicting. Ritter v. Leigh & Wiggins, Inc., 337 So.2d 281 (La.App. 2 Cir.1976). Plaintiff is correct in that the trial court's reasons for judgment do not articulate the theory or evidentiary facts upon which its conclusion is based. However, the language in the trial court's reasons is remarkably similar to the reasons stated by the trial court in Cacioppo v. Doll, 202 So.2d 419 (La.App. 4 Cir.1967), writ refused, 251 La. 396, 204 So.2d 576 (1967) where the defendant argued that a refusal by the trial judge to provide written reasons for judgment upon request rendered the judgment against the defendant invalid. The appellate court, in finding the trial court's judgment to be valid, stated that the language in the signed judgment:
"When after hearing the pleadings, evidence and argument of counsel, and for the reasons orally assigned:"
in deciding against the defendant, was sufficient as written reasons for judgment. This court has held valid a trial court's written reasons for judgment where the wrong defendant was named and cast in judgment terming it a "slip of the tongue which neither misled or damaged anyone." Lavergne v. Lawtell Gravity Drainage District No. 11, 562 So.2d 1013 (La.App. 3 Cir.1990).
It would have been preferable if the trial judge, in his written reasons for judgment, had specifically stated the facts upon which he relied in concluding that Ms. Jessen failed in her burden of proof. In the instant case, where the findings and the reasons for the trial judge's action can be necessarily implied by the record, and where our study of the record shows that on the issues presented for appellate review, sufficient evidence supports the trial court's determination, we may accord deference to a decision of less than ideal clarity. Baton Rouge Water Works v. Louisiana Public Service Commission, 342 So.2d 609 (La.1977); Bloxom v. Bloxom, 512 So.2d 839 (La.1987).

REDHIBITION
Plaintiff asserts error in the trial court's finding that she failed to prove her case by a preponderance of the evidence regarding a redhibitory defect.
The seller of a product is bound by an implied warranty that the thing sold is free of hidden defects and is reasonably fit for its intended use. La.C.C. arts. 2475 and 2476. Redhibition is the avoidance of a sale because some vice or defect in the thing sold renders it either absolutely useless or its use so inconvenient and imperfect that it is presumed that the buyer would not have purchased it had he known of the vice or defect. La.C.C. art. 2520. An essential element in a redhibition action is that the vice or defect was present at the time of sale. If the defect appears within 3 days following the sale, it is presumed to have existed before the sale. La.C.C. art. 2530. The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorney's fees, is answerable to the buyer in damages. La.C.C. art. 2545. The manufacturer of a product is presumed to know of the defects of the thing which it manufactures. Alexander v. Burroughs Corporation, 359 So.2d 607 (La.1978); Cox v. Lanier Business Products, Inc., 423 So.2d 690 (La.App. 1 Cir.1982), writ denied, 429 So.2d 129 (La.1982). If a manufacturer breaches the warranty of fitness, the purchaser of the product has a cause of action to demand the return of the purchase price and to demand all damage caused by the defect. Philippe v. Browning Arms Company, 395 So.2d 310 (La.1981); La.C.C. art. 2545. Absent detailed findings of fact and conclusions of law, we do not know which *257 parts of the testimony the trial judge rejected and what parts he accepted. We surmise, however, the court did not put much stock in the dental technician's opinion that the reason Jessen was experiencing problems with her dentures was because Dr. Wimberly took an inaccurate bite registration.
Dr. Chapman conceded that he could not give what he thought was the exact cause of the bite being off. It "could have been a mistake made in the impression, the relining impression itself, the bite registration where the patient bit down into the denture,... or in the lab processing aspect of it." Again, because of the absence of detailed findings of facts, we do not know what parts of Dr. Chapman's deposition the judge found to be important. We conclude, however, from our reading of the deposition, that the court accepted Dr. Chapman's expertise as a dental surgeon, but that he was inconclusive in his statement as to whether the dentures possessed a vice or defect. It is an inescapable inference that the conflicts in testimony regarding the existence of a vice or defect in the dentures at the time of sale was resolved in defendant's favor. The ultimate determination with regard to the existence or nonexistence of a redhibitory vice or defect under La.C.C. art. 2520 et seq. is a question of fact for the trial court which should not be disturbed in the absence of clear or manifest error. Smith v. General Motors Acceptance Corp., 542 So.2d 831 (La.App. 3 Cir.1989). Failure to prove the existence of a vice or defect in her dentures at the time of sale is a failure by plaintiff to meet the burden of proof required for an action in redhibition. We have carefully reviewed the record in this case and discern no clear error in the trial court's conclusions.

UNFAIR TRADE PRACTICE
Jessen claims that she is entitled to damages which includes attorney's fees and costs under LSA-R.S. 51:1405(A) and 51:1409(A), the Louisiana Unfair Trade Practices and Consumer Protection Law.
LSA-R.S. 51:1405(A) in pertinent part provides:
"Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."
LSA-R.S. 51:1409(A) in pertinent part provides:
"Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by R.S. 51:1405, may bring an action individually... to recover actual damages ... In the event that damages are awarded under this section, the court shall award to the person bringing such action reasonable attorney's fees and costs. Upon a finding by the court that an action under this section was groundless and brought in bad faith or for purposes of harassment, the court may award to the defendant reasonable attorney's fees and costs."
What constitutes unfair trade practices is left up to the courts. Gautreau v. Southern Milk Sales, Inc., 509 So.2d 495 (La. App. 3 Cir.1987), Vercher v. Ford Motor Co., 527 So.2d 995 (La.App. 3 Cir.1988). A trade practice is unfair when it offends public policy and when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. Gautreau, supra, Vercher, supra.
Although we agree that the defendant wrongfully attempted to collect the balance on a debt which plaintiff did not owe, the trial court determines the facts. Since, in the written reasons for judgment, (which we have already determined to be sufficient) the trial judge concludes that plaintiff failed to meet her burden of proof, it follows that after listening to the conflicting testimony concerning the debt collection procedures of defendant's office, he found those actions did not offend public policy nor were the actions immoral, unethical, oppressive, unscrupulous, or substantially injurious.
Reviewing the testimony, we cannot say that the trial court erred in determining that the plaintiff did not prove a violation of the Unfair Trade Practices Act. The trial judge apparently believed the testimony of Dr. Wimberly, Ms. Cook, Ms. Chavanne and Ms. Royer. As credibility determinations are the province of the trial *258 court, we cannot say that his factual findings based on the defendant and his witnesses' testimony are clearly wrong.

FRIVOLOUS APPEAL
Defendant contends that he is entitled to and should be awarded damages and attorney's fees for the plaintiff's frivolous appeal. Defendant reasons that this appeal has been interposed where appealing counsel does not seriously believe in the position he advocates. Damages for frivolous appeals are awarded under LSA-C.C.P. art. 2164 only when it clearly appears that the appeal was taken solely for the purpose of delay or that counsel for the appellant does not seriously believe in his legal position. Goad v. May, 376 So.2d 340 (La.App. 3 Cir.1979); Frank & Co., Inc. v. Devillier's Foodliner, Inc., 365 So.2d 501 (La.App. 4 Cir.1978); Gunderson v. Libbey Glass, 412 So.2d 656 (La.App. 2 Cir.1982). In Jackson v. East Baton Rouge Parish School Board, 348 So.2d 739, 741 (La.App. 1 Cir.1977), the court said:
"Article 2164 of the Code of Civil Procedure authorizes a claim for damages for frivolous appeal, but its provisions are penal in nature and must be strictly construed. Appeals are favored, and the imposition of penalties for a frivolous appeal will not be granted unless they are clearly due. Damages for frivolous appeal will not lie unless it manifestly appears that the appeal was taken solely for delay or that appealing counsel does not seriously believe in the position he advocates, even though the appeal lacks merit."
The above cited rule has been applied consistently by our courts. Franklin v. State Farm Fire & Casualty Co., 488 So.2d 773 (La.App. 3 Cir.1986). Where contentions on appeal are without merit, but raise legitimate issues, damages for frivolous appeals are not allowed. Sample v. Sample, 432 So.2d 376 (La.App. 1 Cir.1983); Mauboules v. Broussard Rice Mills, 379 So.2d 1196 (La.App. 3 Cir.1980), writ denied, 381 So.2d 1234 (La.1980).
In the instant case, an examination of the record reveals that all issues to be decided required a factual finding by the trial judge based upon the credibility of the witnesses. Upon factual findings of the trial court, appellate review is subject to the rules enunciated in Canter and Arceneaux, supra. Plaintiff properly requested that the trial judge provide written reasons for his judgment against plaintiff pursuant to LSA-C.C.P. art. 1917. Plaintiff argued that the written reasons for judgment provided by the trial judge were insufficient and, therefore, his judgment should not be accorded the great deference ordinarily granted to the trier of fact by the appellate court. Had this court concluded that the trial judge's written reasons for judgment were insufficient, we may not have been restricted in our review of the case by the rule of manifest error dictated by the decisions of Canter and Arceneaux, supra, and perhaps would have resolved the case contrary to that of the trial court. Although appellant's position is untenable, given the scant jurisprudence regarding this issue, it is the opinion of this court that it is not frivolous. Mauboules, supra.
For the foregoing reasons, the request for damages for frivolous appeal is denied. The judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.
NOTES
[*] Honorable William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.