417 So.2d 101 (1982)
Inez CRADER, Plaintiff-Appellant,
v.
CASUALTY RECIPROCAL EXCHANGE, Defendant-Appellee.
No. 8518.
Court of Appeal of Louisiana, Third Circuit.
July 2, 1982.
Baggett, McCall, Singleton & Ranier, Drew Ranier, Lake Charles, for plaintiff-appellant.
Brame, Bergstedt & Brame, Joseph A. Brame, Lake Charles, for defendant-appellee.
Before CULPEPPER, SWIFT and LABORDE, JJ.
SWIFT, Judge.
In this workmen's compensation suit Inez Crader is seeking benefits for total and permanent disability from Casualty Reciprocal Exchange, her employer's insurer. Following trial on the merits judgment was rendered in favor of plaintiff awarding her weekly compensation from June 11 through October 9, 1980, together with unpaid medical bills and charges. Her claims for penalties and attorney's fee were denied. The plaintiff has perfected this appeal.[1] We affirm.
The plaintiff, Inez Crader, is a 38 year old short order cook who sustained a fall at Emery's Restaurant in Welsh on February 10, 1979. Plaintiff alleges that she injured her lower back when she fell while carrying a box of gallon jars of salad dressing. Weekly benefits were paid beginning February 15, 1979, through June 11, 1980, at a rate of $77.00 per week. The total amount paid was $5,313.00. Defendant *102 also paid all of Ms. Crader's medical expenses through the date that weekly benefits were terminated.
The plaintiff continued to work and fell again on February 14, 1979. She was then treated by her family physician, Dr. Anglerill, who subsequently referred her to Dr. Clark Gunderson, an orthopedic surgeon in Lake Charles. Dr. Gunderson saw her on nine occasions thereafter. She was also seen by a Dr. Akins.[2] At the request of the defendant, Ms. Crader was seen by Dr. Norman Morin, an orthopedic surgeon, in May and October of 1980.
The assessments of the plaintiff's physical condition by Drs. Gunderson and Morin varied greatly. On his original examination of Ms. Crader in March of 1979 Dr. Gunderson concluded that she had a lumbar straining type injury. After subsequent visits during the period from April of 1979 through July of 1980, his opinion was the same and he thought the plaintiff would probably still have pain lifting, bending and standing for long periods. He did not know if it would be disabling, saying that this would depend on the person. The doctor opined that the plaintiff would have a five per cent impairment, but added that a lumbar straining injury was not necessarily permanent.
Several tests were made on Dr. Gunderson's orders. One was a neurological examination by a Dr. Shamiel, which included an electromyogram of plaintiff's right leg. Another was a myelogram performed by a Dr. Johnson. These produced negative findings.
Dr. Norman Morin saw the plaintiff twice following the negative diagnostic studies by Drs. Shamiel and Johnson. On each occasion this doctor felt that the plaintiff had completely recovered from her prior injury and that she was either exaggerating symptoms caused by excessive weight or was a malingerer.
The plaintiff called two relatives and a friend to support her claim of disabling pain. However, she did not present the testimony of either Dr. Anglerill or Dr. Akins. There was a conflict in the testimony of plaintiff and her employer as to when the accident was reported and prior problems with the plaintiff's knee.
The principal issue on appeal is whether the denial by the trial court of an award to plaintiff either for permanent total or partial disability was manifestly erroneous.
In his written reasons for judgment the trial judge stated that he was unimpressed by Dr. Gunderson's treatment of plaintiff. Obviously, he was not impressed by his opinion in regard to disability and with plaintiff's testimony in this respect.
The standard of review in such a case was expressed by this court in Guidry v. Davis, 382 So.2d 250 (La.App. 3 Cir. 1980), as follows:
"It is also well settled that the jury or trial judge may, and should, assess the credibility of experts who testify at the trial, as well as that of lay witnesses, to determine the most credible and realistic evidence and the fact finder's determination of the credibility of those witnesses will not be disturbed unless found to be clearly erroneous. Green v. State, Southwest Louisiana Charity Hosp.; 309 So.2d 706 (La.App. 3 Cir. 1975), Monette v. Aetna Cas. & Sur. Co., 352 So.2d 423 (La.App. 3 Cir. 1977). After weighing and evaluating all of the medical evidence, and in most cases the lay testimony, relating to the injuries sustained by a plaintiff, the jury or trial judge may accept or reject the opinion expressed by any medical expert, depending upon how he is impressed with the qualifications and the testimony of that expert. Touchet v. Fidelity and Casualty Co. of New York, 264 So.2d 752 (La.App. 3 Cir. 1972)."
In the instant case the trial court was definitely more impressed with the qualifications and testimony of Dr. Morin and chose to accept his expert medical opinion rather than that opinion of Dr. Gunderson. Except for muscle spasms noted on earlier examinations, Dr. Gunderson's testimony *103 reflects that his opinion as to pain and impairment was based only on subjective complaints. His notes did not reflect whether or not he found any muscle spasm on the date he last examined her. Also, his testimony as to pain the plaintiff may suffer in the future falls short of establishing that it will be substantial or disabling. On the other hand, Dr. Morin supported his opinion that the plaintiff had completely recovered from her injury when he saw her by tests and relating the plaintiff's inconsistent and often medically impossible complaints. The plaintiff was last seen by Dr. Gunderson in July of 1980. Dr. Morin, however, examined her both in May and October of the same year.
Presumably, the testimony of Drs. Anglerill and Akins would have been adverse to the plaintiff's position.
From our review of the record we cannot say that the trial court was clearly wrong.
The plaintiff's brief contains no mention of her claim for penalties and an attorney's fee, so we assume such claim has been abandoned. In any event, we do not find that the termination of compensation benefits on the basis of Dr. Morin's medical report was arbitrary, capricious or without probable cause.
For the foregoing reasons, the peremptory exceptions filed in this court by appellee are overruled and the judgment of the trial court is affirmed. All costs of this appeal are assessed against the plaintiff-appellant.
AFFIRMED.
NOTES
[1] After the appeal was lodged the defendant filed in this court "PEREMPTORY EXCEPTIONS OF NO RIGHT AND/OR NO CAUSE OF ACTION," alleging that subsequent to the trial on the merits the plaintiff filed a claim for unemployment benefits and certified that she is capable of returning to work. Consequently, she no longer has a claim for total and permanent disability. Both sides have presented this court with affidavits in regard to this allegation. However, such evidence is not in the record on appeal. Therefore, it is not before this court and cannot be considered by us. Capital Bank and Trust Company v. Lacey, 393 So.2d 668 (La.1980). The peremptory exceptions will be overruled.
[2] Probably Dr. William G. Akins, a Lake Charles orthopedic surgeon.