664 So.2d 784 (1995)
The NEW IBERIA BANCORP, INC., et al., Plaintiffs-Appellants,
v.
Jules A. SCHWING, et al., Defendants-Appellees.
Jules A. SCHWING, et al., Plaintiffs-Appellees,
v.
The NEW IBERIA BANCORP, INC., et al., Defendants-Appellants.
Nos. 95-867, 95-868.
Court of Appeal of Louisiana, Third Circuit.
December 6, 1995.
Writ Denied February 28, 1996.
*785 Samuel E. Masur, Benjamin Brookshire Blanchet, Lafayette, Cathy Ellen Chessin, Camille B. Poche, New Orleans, for The New Iberia Bancorp, Inc. in both cases.
Jack C. Caldwell, Lafayette, William Christian Gambel, Ann Capritto Dowling, New Orleans, for Jules A. Schwing et al. in both cases.
Jack C. Caldwell, William Christian Gambel, Ann Capritto Dowling, Camille B. Poche, for Jules A. Schwing et al.
Samuel E. Masur, Benjamin Brookshire Blanchet E, Cathy Ellen Chessin, Camille B.
Poche, for The New Iberia Bancorp, Inc. et al.
Before DOUCET, C.J., and COOKS and PETERS, JJ.
COOKS, Judge.

FACTS
Bancorp is a Louisiana bank holding company whose sole subsidiary is the New Iberia Bank. Jules Schwing is a member of Bancorp's Board of Directors. During the time period relevant to this litigation, Schwing controlled, individually and as executor of his parents' estates, 32% of Bancorp's issued and outstanding common stock.
In April of 1994, Schwing became aware several in-state holding companies were interested in acquiring the New Iberia Bank. Believing other shareholders were interested in examining these possibilities, Schwing asked Bancorp's Board to form a committee to field potential inquiries. His multiple requests were either voted down or ignored by the Board.
Schwing then requested Bancorp's secretary call a special meeting of shareholders to consider four proposals for determining the depth of any potential interest. Bancorp refused to call the meeting. Schwing then requested a list of Bancorp's shareholders to communicate directly with them and call a meeting himself. Under La.R.S. 12:73(B) "[a]t any time, upon written request of any shareholder or shareholders holding in the aggregate one-fifth (or such lesser or greater proportion as may be fixed in the articles or in a by-law adopted by the shareholders) of the total voting power, the secretary shall call a special meeting of shareholders...." Bancorp refused to provide Schwing with the list and filed for a declaratory judgment in the district court, claiming pursuant to a super-majority provision in Bancorp's by-laws, Schwing did not own sufficient stock to make such a request. The district court found the super-majority provision was invalid, and denied the declaratory judgment. Bancorp did not appeal this ruling.
Bancorp, nevertheless, refused again to provide Schwing with a copy of the shareholders *786 list. Schwing petitioned for a writ of mandamus to require Bancorp to furnish the list. On November 8, 1994, the district court granted the writ and ordered that Bancorp deliver the list to Schwing. That same day Bancorp filed a First Amended and Restated Petition for Declaratory Judgment contesting the validity and propriety of Schwing's four consent proposals. The petition sought a declaratory judgment that each proposal advanced by Schwing was inappropriate for shareholder consideration under Louisiana law.
On November 11, 1994, Schwing again requested the calling of a special shareholders meeting for the purpose of presenting his four proposals. Instead, Bancorp called for a special shareholders meeting for December 28, 1994, and submitted the following proposal for consideration by the shareholders: "Do you recommend that the Board of Directors actively solicit a buyer or merger partner for the Company [Bancorp] and the Bank?" Schwing made a written request to Bancorp to include his four proposals for consideration and vote by the shareholders at the special meeting. Bancorp refused, and Schwing sued for and obtained a temporary restraining order from the United States District Court to enjoin Bancorp from mailing out its proxy materials without also including Schwing's shareholder proposals. Bancorp filed an application for injunctive relief with the United States District Court on November 29, 1994, contending Schwing's proposals were false and misleading. The federal proceedings were consolidated. With the federal court's oversight and instruction, all disputes raised in the proceedings were settled.
On December 8, 1994, Bancorp and Schwing mailed their respective proposals to the shareholders. Schwing sought shareholder approval of his four proposals. The second of these proposals, and the only one we deem at issue on appeal, requested Bancorp's shareholders recognize, support, empower and direct a committee of five shareholders to explore and make recommendations regarding a possible sale or merger.
On December 27, 1994, Schwing presented Bancorp with written consents executed by shareholders owning approximately 54% of the issued and outstanding shares of Bancorp stock approving the four proposals. The following day Bancorp's shareholders voted against the recommendation of Bancorp's management and approved by 55% majority resolutions directing Bancorp's Board to actively solicit a buyer or merger partner for Bancorp and/or the New Iberia Bank.
On January 4, 1995, Bancorp filed a Second Amended and Restated Petition, adding to the November 8, 1994 petition a request for temporary and permanent injunctive relief restraining Schwing and his committee from negotiating a potential sale or merger of Bancorp or the New Iberia Bank. The district court granted Bancorp's request for a temporary restraining order.
On January 9, 1995, the district court held a hearing on Bancorp's application for a preliminary injunction. The district court denied most of the relief sought by Bancorp; but did prohibit Schwing and the Shareholders Committee from 1) entering into binding contract documents relating to a sale or merger, and 2) directly or indirectly providing nonpublic bank records to third persons.
A dispute arose as to what documents were "nonpublic." Briefs were submitted to the district court by both parties identifying which documents were "nonpublic." To resolve these disputes, the district court requested the parties name an independent banking expert to provide input. However, the parties each retained their own expert. The parties and their experts met in chambers and agreed which documents could be disclosed to third persons. Bancorp at all times reserved its continuing objection to the existence of the Shareholders Committee.
On March 29, 1995, the preliminary injunction rendered in the January 9 ruling was entered, along with the agreed upon list of "nonpublic" documents that could be released to third parties. Also pending were cross-motions for summary judgment filed by the parties each claiming entitlement to judgment as a matter of law based on the undisputed facts. The district court granted Schwing's motion for summary judgment and denied Bancorp's cross-motion, finding that *787 the Shareholders Committee is "merely an advisory group" to the shareholders with "no authority whatever to bind anyone to anything" and did not usurp the authority or function of the Board of Directors. On May 22, 1995, the district court entered final judgment formally dismissing Bancorp's claims and converting the Preliminary Injunction entered March 29, 1995 to a permanent injunction.
Bancorp has appealed the final judgment and asserts the following assignments of error:
A. The trial court erred in failing to find that the written consent proposals purporting to authorize and empower the Schwing shareholder committee are not appropriate for shareholder action and consideration under Louisiana law.
B. The trial court should have granted to the Bank the injunctive relief it requested.

STANDARD OF REVIEW
Appellate review of a summary judgment is de novo under the same standard that governs the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors, 591 So.2d 342 (La.1991); Norcen Explorer, Inc. v. Kavanagh, 94-1058 (La.App. 3 Cir. 3/1/95), 651 So.2d 473. The appellate court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966B. In making this determination, the appellate court is limited to the evidence found in the record at the time the trial court rendered its judgment. Crader v. Cas. Reciprocal Exchange, 417 So.2d 101 (La.App. 3 Cir.1982).

ANALYSIS

I. Validity of Proposal 2
Bancorp's primary argument is that Proposal 2 is inappropriate for shareholder consideration because the purpose and function of the Shareholders Committee is to usurp the authority of the Board to manage the affairs of the Bank. Bancorp lists a number of ways in which it alleges Proposal 2 usurps the authority of the Board of Directors. Proposal 2 reproduced below states:
RESOLVED, that the shareholders hereby recognize and support the Shareholders Committee ... and empower and direct it to:
a) develop a strategic plan for optimizing shareholder value and to solicit from third party banks and bank holding companies expressions of interest in a possible transaction, approvable by the shareholders alone pursuant to La.R.S. 12:121, involving a tax free exchange by the Corporation of the Bank's stock for securities of another bank or bank holding company, to be followed by distribution of such securities to the Corporation's shareholders as a liquidating dividend or otherwise;
b) if invited by one or more Board members, explore and make recommendations to the Board regarding a possible tax free merger of the Company or the Bank with another bank or bank holding company;
c) examine and copy (in accordance with, and to the fullest extent allowed by law, but subject to appropriate undertakings of confidentiality) all of the books, records and accounts of the Corporation and the Bank (except files and records relating to credit information, loan transactions, and deposit accounts of individual customers of the Bank, which records shall be deemed confidential and shall not be subject to shareholder inspection) that will enable a prospective acquiror reasonably to perform its "due diligence" and value the Corporation and the Bank with a view toward making a bid or offer to acquire the stock of one or both of them;
d) retain legal counsel and other advisers and do any and all such other things as the Shareholders Committee, in its discretion, deems necessary or appropriate in order to implement the actions described in this resolution.
Once the Shareholders Committee has formulated recommendations regarding the foregoing, its members are empowered and directed to take such action as they may deem necessary or appropriate to *788 cause a special meeting of shareholders to be held as soon as practicable for the purpose of reporting to the shareholders of the Corporation the Shareholders Committee's recommendations and considering and voting upon appropriate implementing shareholder resolutions, and to take such further or other actions as they may deem necessary or appropriate in connection with the foregoing.
The shareholders hereby request the members of the Shareholders Committee to take such of the foregoing actions in their individual capacities as they regard appropriate to carry out the purposes and intent of this resolution. Shareholders voting in the affirmative for this resolution hereby authorize the members of the Shareholders Committee to request the right to examine and copy the books, records and accounts of the Corporation and the Bank and conduct the review of such records as described in clause c) above as the attorneys-in-fact for such shareholders.
The trial court ruled the Shareholders Committee created by Proposal 2 is an "advisory and recommending body" to the shareholders with "power and authority to solicit and encourage expressions of interest in a merger or sale of the stock or assets of Bancorp." We agree. The language of Proposal 2 gives the Shareholders Committee no actual or apparent authority to act on behalf of Bancorp or to bind Bancorp, the Bank or the shareholders to any sale or merger. Proposal 2 confers authority on the Shareholders Committee to perform only those acts which any shareholder of Bancorp acting alone or with others has the power to perform. Schwing has not attempted to expand the Shareholders Committee's express purpose, i.e., to explore possible expressions of interest and report and make recommendations to the shareholders and Board.
Bancorp argues no statutory authority exists for the formation of shareholders committees. While there is no express provision in the Louisiana Business Corporation Law sanctioning shareholder committees, there likewise is no provision prohibiting the formation of shareholder committees. Clearly, shareholders of a corporation have the right to act through committees. It is common practice to have nominating committees, by-law committees and liquidating committees. Committees such as these are intended to act in an advisory capacity only, and are not intended to usurp the power of the board of directors in any fashion. Schwing presented numerous no action letters issued by the Securities and Exchange Commission (SEC) which stated that shareholders committees which act in an advisory capacity are appropriate. Thomas J. Andre, a law professor at Tulane University, stated "a shareholder committee may act in an advisory capacity only. The board is not obligated to follow the recommendations made by the shareholders committee." Shareholders committees are not illegal simply because their formation is not addressed by statute.
Bancorp further contends that the at issue shareholders committee is illegal because it asserts the right to act on behalf of Bancorp and the Bank in soliciting, pursuing and negotiating expressions of interest without a concomitant fiduciary duty to Bancorp's shareholders. The Shareholders Committee was appointed and empowered by majority vote of Bancorp's shareholders in accordance with the by-laws. Therefore, under fundamental agency principles, the Shareholders Committee owes fiduciary duties to the whole of Bancorp's shareholders to carry out the duties assigned.
Bancorp asserts Proposal 2 is inappropriate because it purports to authorize the Shareholders Committee to negotiate, execute and submit to the shareholders for approval, a merger or sale of assets transaction without approval or participation by the Board of Directors. As stated earlier, contrary to Bancorp's contentions the language of Proposal 2 authorizes the Shareholders Committee only to "explore and make recommendations" regarding potential merger transactions. Nowhere in Proposal 2 is the Shareholders Committee empowered to effect a binding merger transaction. Schwing has at all times acknowledged that pursuant to La.R.S. 12:112, the board of directors of a corporation shall either enter into an agreement of merger or consolidation signed by a majority of the directors of each, or adopt a *789 resolution approving an agreement of merger or consolidation before it can be presented to the shareholders. We find nothing in Proposal 2 that attempts to usurp this authority from Bancorp's Board of Directors.
Bancorp next contends Proposal 2 is inappropriate for shareholder consideration because the authority to negotiate and fix the terms of a sale, lease or exchange of all the assets of a corporation pursuant to La.R.S. 12:121 is vested in the board of directors, not the shareholders. La.R.S. 12:121B provides that shareholders may "authorize" a transfer of assets by two-thirds of their voting power. Since shareholders are empowered to authorize Assets Transactions on terms and conditions which they consider expedient, clearly they are authorized to solicit expressions of interest in and recommend such transactions. Any argument that such recommendations are not authorized by law or usurp the Board's authority is without merit.
Bancorp also argues Proposal 2 authorizes the Shareholders Committee to provide confidential, nonpublic information to its competitors. This contention is refuted by the language of the proposal. Proposal 2 empowers the Shareholders Committee to "examine and copy books and records of Bancorp and the Bank in accordance with, and to the fullest extent allowed by law."
Bancorp also argues Proposals 1 and 4 are so interrelated with Proposal 2, they also must be regarded as inappropriate for shareholder consideration. Having found Proposal 2 is valid, Bancorp's argument lacks merit.
After reviewing the record, we find the trial court correctly concluded the Shareholders Committee created by Proposal 2 is an "advisory and recommending body," with no actual or apparent authority to act on behalf of Bancorp, or to bind Bancorp, the Bank or the shareholders to any sale or merger. Therefore, it does not usurp the authority granted the Board of Directors under the Louisiana Business Corporation Law.

II. Injunctive Relief
Next, Bancorp contends it is entitled to injunctive relief because the actions of the Shareholders Committee usurp the exclusive authority of the Board of Directors to manage the business and affairs of the corporation and, therefore, irreparably harm the Bank. This argument is without merit. As discussed earlier the function of the Shareholders Committee is to explore possible expressions of interest and report and make recommendations to the shareholders and Board. Moreover, the permanent injunction issued by the district court expressly prohibits the Shareholders Committee from "holding [itself] out as having the right to execute or agree to the terms of an agreement or purporting to bind the Bank, Bancorp or its shareholders or otherwise obligate any of them to any document purporting to create enforceable rights to require, compel or effect such sale or merger." Thus, injunctive relief on these grounds is inappropriate.
Bancorp also argues it will be irreparably harmed by the release of "nonpublic" documents to third party competitors. However, before its January 9 ruling on Bancorp's application for injunctive relief which prohibited the Shareholders Committee from disclosing "nonpublic" information to third parties, the trial court had each party participate in crafting an exhibit reflecting what information could be released to potential acquirors. After an in chambers meeting with both sides, the parties agreed the items listed in this exhibit could be publicly disclosed. Bancorp cannot now claim that it will suffer irreparable harm if the Shareholders Committee releases the previously agreed upon information to third parties.

DECREE
For the foregoing reasons, the decision of the lower court is affirmed. All costs of this appeal are assessed against plaintiff-appellant, New Iberia Bancorp.
AFFIRMED.